Nos. 97-325 & 97-433

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 287

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHN KUNEFF and

ERNEST VAN GAWRYLUK,

Defendants and Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

William F. Hooks, Chad Wright, Appellate Defender Office,

Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;

Pamela P. Collins, Ass't Attorney General, Helena Montana

Dennis Paxinos, Yellowstone County Attorney; Melanie Logan,

Deputy County Attorney, Billings, Montana

Submitted on Briefs: August 13, 1998

Decided: November 24, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Defendants John Kuneff (Kuneff) and Ernest Van Gawryluk (Van Gawryluk) appeal from the decision of the Thirteenth Judicial District, Yellowstone County, denying their motion to suppress.**

**¶2. We affirm.**

**¶3. In determining whether the District Court erred, we consider the following issues:**

**¶4. 1. The standard of review for a search warrant based in part on illegally obtained evidence.**

**¶5. 2. Whether, in the absence of the illegally obtained evidence, there was sufficient probable cause to support the issuance of the search warrant.**

Standard of Review

**¶6. The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings**

were correctly applied as a matter of law. State v. Siegal (1997), 281 Mont. 250, 257, 934 P.2d 176,180; State v. Williams (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021 (citing State v. Flack (1993), 260 Mont. 181, 188, 860 P.2d 89, 94).

Factual and Procedural Background

¶7. On September 23, 1996 Billings police officers Anderson and Iffland went to the trailer home of defendants Kuneff and Van Gawryluk. The officers had an anonymous tip that marijuana was being grown in the defendants' home. Van Gawryluk allowed them to enter the trailer after they introduced themselves as police officers. However, Van Gawryluk denied them permission to search the trailer. The officers asked Van Gawryluk if the volume of the stereo that was playing could be lowered, and Van Gawryluk agreed. As Officer Anderson (Anderson) turned down the stereo, he noticed a pipe that he recognized as a marijuana pipe. The officers then handcuffed Van Gawryluk and Kuneff and took them into custody. In response to the officers' questions, Van Gawryluk and Kuneff indicated that another person was present in the trailer. Anderson then found a third person, Darvin Hall, in the front bedroom of the trailer and handcuffed him. Iffland then went down a hallway to the other bedroom in the trailer and discovered marijuana plants.

¶8. Billings police officers then applied for a search warrant. A Justice of the Peace issued the warrant, and police searched defendants' trailer. The police seized additional evidence of drugs.

¶9. By stipulation of the parties, the District Court consolidated Kuneff and Van Gawryluk's cases for pretrial motions and trial. A hearing was held on their motion to suppress. Kuneff and Van Gawryluk moved to suppress all evidence of drugs and drug paraphernalia, except for the marijuana pipe, which they conceded was in plain view of the officers. They also moved to suppress Van Gawryluk's subsequent confession to the police. Kuneff and Van Gawryluk argued that the officers conducted an illegal warrantless search of the bedroom in the trailer. They argued that the exclusionary rule barred the admission of the illegally seized evidence at trial. They further contended that the evidence seized pursuant to the search warrant should be suppressed because it was tainted as a result of the illegal search.

¶10. The State responded that the warrantless seizure of the marijuana plants

occurred in the course of a legitimate protective sweep of the trailer.

¶11. The District Court concluded that the warrantless search of the bedroom was illegal because the police did not have reasonable grounds to believe that the trailer held additional persons who posed a danger and the State had failed to show that any other exceptions to the requirement for a search warrant were met. The District Court granted defendants' motion to suppress the plants that were seized from the trailer without a warrant.

¶12. The District Court found, however, that there was sufficient probable cause for the issuance of the search warrant even without the plants seized in the course of the illegal search. The District Court concluded that the exclusionary rule did not apply to the evidence seized with a search warrant.

¶13. Kuneff and Van Gawryluk each pled guilty under the terms of an *Alford* plea to Count I, Criminal Production or Manufacture of Dangerous Drugs (Felony); Count II, Criminal Possession of Dangerous Drugs with Intent to Sell (Felony); and Count V, Criminal Possession of Drug Paraphernalia (Misdemeanor). Kuneff and Van Gawryluk reserved their rights to appeal. The District Court sentenced them each to ten years prison on Count I, suspending the sentences and placing them on probation. On Count II, the District Court also sentenced them each to ten years prison, suspending the sentences and placing them on probation, concurrent with Count I. On Count V, the District Court sentenced Kuneff and Van Gawryluk each to six months in Yellowstone County's detention facility concurrent with Count I, but suspended the sentences.

Discussion

¶14. 1.  The standard of review for a search warrant based in part on illegally obtained information.

¶15. Kuneff and Van Gawryluk argue that the exclusionary rule bars not only the marijuana seized as a result of the officers' illegal search but also the evidence that the police seized with a search warrant. They argue that the independent source and inevitable discovery exceptions to the exclusionary rule do not apply in the present case. Kuneff and Van Gawryluk assert that there was no basis for issuance of a search warrant without the discovery of the marijuana plants. They further assert

that in reviewing whether there was an independent source for the evidence seized with a search warrant, the standard of review is *de novo*.

¶16. In reviewing the application for search warrant, the District Court excised the police officers' discovery of marijuana plants during their warrantless search. Relying on Segura v. United States and United States v. Wanless, the District Court concluded that evidence obtained after an illegal search need not be excluded unless the illegality is the "but for" cause of the discovery of evidence. Segura v. United States (1984), 468 U.S. 796, 815, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599, 615 (concluding evidence will not be excluded following illegal search or seizure "unless the illegality is at least the 'but for' cause of the discovery of the evidence"); United States v. Wanless (9th Cir. 1989), 882 F.2d 1459, 1465 (holding evidence seized as direct result of illegal search cannot establish probable cause for later search warrant). The District Court concluded that there was probable cause for the search warrant based on the discovery of the marijuana pipe and that the evidence seized pursuant to the search warrant was free of taint and therefore not barred by the exclusionary rule.

¶17. In considering the effect of the officers' illegal search on the search warrant, we follow this Court's decision in State v. Siegal. State v. Siegal (1997), 281 Mont. 250, 934 P.2d 176. In *Siegal*, police scanned buildings on defendant's property with a thermal imaging scanner. The police did not have a warrant. The police found that an unusual amount of heat was discharged from a shed and that the heat discharged was consistent with the use of grow lamps to cultivate marijuana. A scan of the other buildings revealed that their heat emissions were normal. Based in part on the results of the thermal imaging scan, the police obtained a search warrant and searched defendant's property. The police seized marijuana. The Court in *Siegal* held that the thermal imaging scan of defendant's property was a warrantless search that implicated Montana's constitutional right to privacy under Article II, Section 10. The Court then "excise[d] the results of the thermal imaging scan from the search warrant application and review[ed] the remaining information to determine if sufficient probable cause existed for the issuance of the warrant." *Siegal*, 281 Mont. at 279, 934 P.2d at 193. Thus, in determining whether there was probable cause to support the issuance of the search warrant, we consider the application for search warrant without the marijuana plants that the officers seized without a warrant.

¶18. In previous decisions, this Court has held that magistrates' determinations of

probable cause should receive great deference, and that such determinations should be upheld if there is a substantial basis for them. In State v. Oleson, we held that "the duty of a reviewing court is simply to ensure that a magistrate had a substantial basis for concluding that probable cause to issue a warrant existed." State v. Oleson, 1998 MT 130, ¶ 7, 959 P.2d 503, ¶ 7, 55 St.Rep. 517, ¶ 7 (citation omitted). *See also Siegal*, 281 Mont. at 279, 934 P.2d at 193 (affirming this Court's holding, in State v. Rydberg (1989), 239 Mont. 70, 73, 778 P.2d 902, 904, that magistrates' determinations of probable cause should receive great deference).

¶19. As a matter of logic and common sense, a reviewing court cannot defer to a magistrate's consideration of an application for search warrant that the magistrate in effect did not review. In the present case, the District Court reviewed an application for search warrant that differed materially from that which the magistrate reviewed, because the District Court excised the information regarding the results of the warrantless search. Under these facts, it would therefore be inappropriate to deferentially review the magistrate's determination that the application for search warrant established probable cause. Although we articulated and applied the "great deference" standard in *Siegal* in declining to conduct a *de novo* review of the search warrant application following excision of the results of the thermal imaging search, the issue of the standard of review in such excision cases was not raised and it did not determine our decision in that case. With the benefit of briefing directed to this particular issue, we now hold that when the issuance of a search warrant is based in part on illegal information, the reviewing court shall excise the illegally obtained information from the application for search warrant and review the remaining information *de novo* to determine whether probable cause supported the issuance of a search warrant. To the extent that *Siegal* and our previous decisions suggest that great deference be paid to a magistrate's determination of probable cause even after information has been excised from an application for search warrant, we overrule the use of that standard of review in such circumstances.

¶20. 2. Whether there was sufficient probable cause to support the issuance of the search warrant in the absence of the illegally obtained information.

¶21. An application for a search warrant must state facts sufficient to show probable cause for the issuance of the warrant. *See* § 46-5-221, MCA; State v. Rinehart (1993), 262 Mont. 204, 209, 864 P.2d 1219, 1222. Probable cause must be determined

exclusively from the "four corners" of the search warrant application. *Rinehart*, 262 Mont. at 211, 864 P.2d at 1223 (citation omitted).

**¶22. Probable cause exists when the facts and circumstances presented "would warrant an honest belief in the mind of a reasonable and prudent man that the offense has been, or is being, committed and 'that the property sought exists at the place designated.' " State v. Isom (1982), 196 Mont. 330, 343, 641 P.2d 417, 424 (citation omitted). This Court has adopted the "totality of the circumstances" test set forth in Illinois v. Gates.** *See* **State v. Crowder (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. The Court in Illinois v. Gates held that:**

The task of the issuing magistrate is simply to make a practical, common-sense determination whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. Probable cause requires a determination that there is a probability of criminal activity. *Rinehart*, 262 Mont. at 210, 864 P.2d at 1222 (citation omitted).

**¶23. With the information from the illegal search excised, the search warrant application presented the following facts in support of a determination of probable cause:**

On September 23th [sic], 1996, Billings Police Officers RICK ANDERSON (Anderson) and KEVIN IFFLAND (Iffland) received a report from LT. TOM TAGGART (Taggart) . . . . The report, dated July 11, 1996 indicated that Taggart had spoken to a source who advised Taggart of a trailer house at the end of Florine Lane, in which the occupants were keeping several mature marijuana plants in the bedroom closets. The information indicated the occupants names as being "JOHN KOUNEFF" and an "ERNIE" with an unknown last name. The information included the fact that the source had observed the plants on July 1, 1996. The information further indicated that the vehicle that the occupants used was a newer blue Chevrolet. On July 11, 1996, Taggart, with the CCSIU, drove by the location and observed a 1994 Chevrolet green pickup, Montana license, 3T-146F, which is registered to a ERNIE and MARILYN GAWRYLUK. Police records indicate that ERNIE GAWRYLUK is listed as living at the address of 138 Prickett

Lane, trailer #8.

On September 23rd, 1996, Anderson and Iffland, using the information on the report, went to the trailer located at the end of Florine Lane, and having the numbers on the side of the trailer "132 8," and having a green pickup truck parked in the drive way with the license plate number, Montana 3T-146F, did go to the front north east door of the residence and knock on the door. Anderson had activated a tape recording device to record the conversation and advised the subject at the door that he had received information and a complaint and would like to talk with him. The occupant, later identified as JOHN KUNEFF, asked the Officers to come inside. The Officers advised KUNEFF that they had received information indicating, that marijuana was being grown in the residence and that they were there to either confirm the information, or show that there was no marijuana being grown. Due to a loud stereo being played, which was distracting to the conversation, Anderson asked Kuneff if he could turn down the stereo. The response was that it was alright to, "turn it down a little." Anderson walked into the living room and went to the stereo and turned it down. A second subject then came out of an unknown back bedroom and was identified as ERNEST GAWRYLUK. Anderson then began to speak with Gawryluk, and in doing so, observed a small marijuana pipe lying on a shelf in the living room.

Anderson then advised Iffland what he had observed and advised him to place both subjects under arrest.

We conclude that the marijuana pipe and the tip established probable cause for the issuance of the search warrant.

**¶24. Kuneff and Van Gawryluk argue that the tip was not reliable; that it was not sufficiently corroborated by the officers. However, Lieutenant Taggart spoke to the informant and partly corroborated the tip, finding a trailer at the end of Florine Lane with a parked vehicle registered to Ernie and Marilyn Gawryluk. Police records revealed that Ernie Gawryluk was listed as a resident at 138 Prickett Lane, trailer #8. The informant's tip was based on the informant's own observation, thus strengthening its reliability. *See Oleson*, ¶ 13. Moreover, information provided to police that is "motivated by good citizenship" is a reliable basis for determining probable cause. *Oleson*, ¶ 14 (citation omitted). We conclude that the tip had sufficient reliability.**

¶25. Kuneff and Van Gawryluk also argue that the tip was not sufficiently detailed to establish probable cause. As communicated to Lieutenant Taggart, however, the tip provided information of a criminal activity that was personally observed by the informant. Thus, we find no merit in this argument.

¶26. Kuneff and Van Gawryluk further argue that the information in the tip was stale and that it should not have been relied upon in determining whether there was probable cause for the issuance of a search warrant. We need not consider this contention because the defendants did not raise it before the District Court. Appellants may not change their theories on appeal from those that they presented in district court. *See* State v. Woods (1997), 283 Mont. 359, 372, 942 P.2d 88, 96; §§ 46-20-104(2) and 46-20-701(2), MCA. Without ruling on this issue, however, we would note that the tip, though based on information nearly three months old, concerned information of a continuing criminal enterprise: the marijuana plants were reportedly being grown.

¶27. Finally, Kuneff and Van Gawryluk argue that the results of the executed search warrant should be suppressed because the marijuana pipe did not establish probable cause. Defendants have misstated the appropriate inquiry. The test is not to determine whether each individual fact presented in the application for search warrant establishes probable cause, but to determine from the totality of the circumstances whether there is probable cause. Illinois v. Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. The pipe and the tip together established probable cause for the issuance of the search warrant.

¶28. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

Justice William E. Hunt, Sr., concurring in part, dissenting in part.

¶29 I concur with that portion of the majority opinion which sets forth the standard of review for a search warrant based in part on illegally obtained information. I dissent from the second part of the majority opinion. I would hold that there was no probable cause to issue the search warrant.

¶30 First, I disagree with the majority's opinion that the tip had sufficient reliability. This Court has repeatedly stated that the "veracity, reliability and basis of knowledge of informants remain highly relevant factors in determining probable cause. . . ." State v. Siegal (1997), 281 Mont. 250, 281, 934 P.2d 176, 194 (citing State v. Rinehart (1993), 262 Mont. 204, 210, 864 P.2d 1219, 1222). We have thus upheld search warrants where the application contained a statement that the informants were known to law enforcement officers and that the informant had been reliable in the past. Siegal, 281 Mont. at 281, 934 P.2d at 194; Rinehart, 262 Mont. at 212, 864 P.2d at 1223-24. In contrast, we have held that anonymous Crimestoppers' tips are not adequate to support probable cause without investigation to verify or corroborate the information in the tip. Rinehart, 262 Mont. at 211, 864 P.2d at 1223.

¶31 In this case, the tip was an anonymous Crimestoppers' tip. The application for the search warrant did not contain any statement that the officer knew the informant or that the informant had provided reliable information in the past. Hence, further investigation to verify or corroborate the information contained in the tip was necessary.

¶32 However, it is my opinion that the investigation failed to sufficiently corroborate the tip. First, neither officer Anderson nor Iffland performed a background check on the people identified in the tip, and the application did not contain any information that either defendant had a criminal history. More importantly, some of the information contained within the tip was inaccurate. The informant stated that the defendants used a "newer blue Chevrolet." However, during the investigation, Lieutenant Taggart located a green Chevrolet pickup truck at the trailer. The tip thus contained incorrect information about the type and color of the vehicle.

¶33 In support of its holding that the tip was sufficiently corroborated, the majority points in part to the fact that Lieutenant Taggart found a trailer at the end of Florine Lane with a parked vehicle registered to Ernie and Marilyn Gawryluk. However, in the past, we have stated that "facts of a description and location of property, while

easily confirmable by a driveby, can hardly be regarded as probative of the probability of the presence of contraband therein." <u>Siegal</u>, 281 Mont. at 282, 934 P.2d at 195 (citation omitted). The fact that the officers were able to corroborate facts regarding location of the trailer and that a vehicle was registered to an "Ernie" is not probative of the probability of the presence of marijuana plants therein.

¶34 The majority buttresses its opinion by adding that the anonymous Crimestoppers' tip was reliable because it was based upon the informant's own observation and that it was "motivated by good citizenship." Again, I disagree with the majority's opinion. While the majority is accurate in noting that this Court has stated that a tip's reliability is strengthened if it was based upon the personal observation of the informant, this is true only in cases where the police officers know the informant and the informant has provided reliable information in the past. In <u>Rinehart</u>, the Court stated:

[w]e have previously held that information of a criminal activity known from observation by a previously reliable informant . . . is sufficient to establish the probability of criminal activity. . . .

<u>Rinehart</u>, 262 Mont. at 213, 864 P.2d at 1224 (citation omitted). In that case, we held that the *combination* of the fact that the informant was proven reliable in the past and that the informant's information was based on personal observation was sufficient to establish probable cause to issue a search warrant. Rinehart, 262 Mont. at 213, 864 P.2d at 1224. In this case, while the anonymous Crimestoppers' tip was allegedly based upon the informant's personal knowledge, we still have no basis for determining whether or not the informant was reliable.

¶35 The majority is also correct in noting that an informant motivated by good citizenship is presumed reliable. But as we pointed out in <u>Siegal</u>, before such a presumption can be made, the Court must determine the circumstances under which the informant learned the information. In that case we stated:

[A] citizen informant is presumed reliable. However, this is not a per se rule. The reliability of a citizen informant is generally shown by the very nature of the circumstances under which the incriminating information became known

<u>Siegal</u>, 281 Mont. at 281, 934 P.2d at 194 (citation omitted). In this case, we know only that the anonymous informant allegedly observed marijuana plants on July 1,1996. We know virtually nothing else about the "nature of the circumstances" under which he or she learned of the incriminating information. Thus, the Court cannot presume the informant to be reliable or to be motivated by good citizenship.

¶36 The majority cites State v. Oleson, 1998 MT 130, 959 P.2d 503, 55 St.Rep.517, in support of its opinion that the tip was reliable because it was allegedly based upon the informant's personal knowledge and was motivated by good citizenship. However, that case is distinguishable. In <u>Oleson</u>, the law enforcement officer contacted the informant and established his identification. <u>Oleson</u>, ¶¶ 10, 13. Moreover, unlike this case, the informant who saw the defendant engage in unlawful game spotlighting and poaching gave a detailed description explaining what he observed and the nature of the circumstances under which he learned the information. <u>Oleson</u>, ¶ 10. Finally, in <u>Oleson</u>, the law enforcement officer corroborated the informant's information. <u>Oleson</u>, ¶ 14.

¶37 In summary, the application for the search warrant in this case established neither the anonymous informant's reliability nor the basis of the informant's knowledge. Moreover, the tip was not sufficiently corroborated. The tip did not establish probable cause for the issuance of the search warrant.

¶38 I disagree with the majority's conclusion that the tip when considered together with the pipe established probable cause for the issuance of the warrant. While the pipe may establish probable cause to arrest the defendants for a misdemeanor possession of drug paraphernalia, it does not establish probable cause to search the home for evidence that the defendants engaged in the felony crime of producing or manufacturing dangerous drugs. Even when considered together with the tip, it is insufficient to establish probable cause. The pipe neither corroborates nor adds any other evidence indicating that the defendants actually engaged in a marijuana-growing operation.

¶39 Because I would reverse on the basis that the tip and the pipe do not establish probable cause for the issuance of the search warrant, I would not address the defendants' alternative argument that all the evidence should be suppressed by virtue of the exclusionary rule.

/S/ WILLIAM E. HUNT, SR.