No. 99-403

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 107N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOEY R. DEEG,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Carbon,

Honorable G. Todd Baugh, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Karl Knuchel, Attorney at Law, Livingston, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

A. W. Kendall, County Attorney, Red Lodge, Montana

Submitted on Briefs: March 16, 2000

Decided: April 27, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 This is an appeal from the partial denial by the District Court of the Thirteenth Judicial District, Carbon County, of Joey R. Deeg's motion to suppress evidence. The court refused to suppress observations and videotape of Deeg's starving and injured mare and colt taken from a knoll overlooking his grassless pasture. After the court ruled on his motion, Deeg pled guilty to thirty-five misdemeanor cruelty to animals charges, reserving the right to appeal the ruling on his motion to suppress. We affirm.

¶3 The dispositive issues are whether sufficient lawfully gathered evidence supported the probable cause finding for the search warrant and whether the warrant was specific enough.

¶4 In *State v. Bullock* (1995), 272 Mont. 361, 901 P.2d 61, we expanded the zone of privacy previously recognized in Montana, concluding that a person may have an expectation of privacy in an area of land beyond the curtilage immediately surrounding his or her home. When that expectation is evidenced by fencing, "no trespassing" signs, or some other means indicating unmistakably that entry is not permitted, entry by law enforcement officers requires permission or a warrant. *Bullock*, 272 Mont. at 384, 901

P.2d at 75-76. We recognized, however, that the warrant requirement does not apply to observations of private land from public property. *Bullock*, 272 Mont. at 384, 901 P.2d at 76.

¶5 Deeg points out that in this case, the affidavit in support of the application for a search warrant did not recite that the officer was on public ground when he made his observations. Deeg asserts that it is impossible to tell from the affidavit what evidence was obtained on or off his property. However, he has identified nothing in *Bullock* or any other authority which imposes a requirement that an affidavit in support of an application for a search warrant must state that observations upon which the affidavit is based were made from public land.

¶6 The District Court found clear and convincing evidence that the deputies "were not on defendant's property when they were on the knoll, hillock, or vantage point west of defendant's boundary. . . . Accordingly, the evidence gathered from there is admissible." Deeg disagrees, asserting that under *Bullock*, the District Court should have suppressed all of the offered evidence against him because "[t]he testimony at the hearing was clear that the Officers were on Deeg's property when they made their videotape and initial observations."

¶7 Deeg relies heavily on evidence of the number of fences between the deputies and the mare and colt when the deputies made their initial observations. He asserts that if, as the officers testified, there was only one fence between them and the pasture in which they observed the mare and colt, then they must have been on his land.

¶8 Contrary to Deeg's assertion, though, the testimony at the hearing was anything but clear that the officers were on his property when they made their initial videotape and observations from the knoll. One of the deputies testified that only after Deeg arrived at his pasture and yelled at them to "come down here" did they pass through a gate in a fence with "no trespassing" signs. The other deputy testified that they did not cross Deeg land on their way to the knoll from which he first videotaped the Deeg Ranch, and that he knew this because he was familiar with the area, having worked there before. He marked on a topographical map the place from which they had observed the horses, and that map was entered as an exhibit. After listening to the two officers' testimony, a federal Bureau of Land Management (BLM) agent familiar with the area testified that it was his opinion that the deputies were on BLM land when they were on the knoll. Even Deeg's expert land surveyor witness acknowledged that Deeg's pasture could be observed from the knoll on

BLM land.

¶9 Because we hold that sufficient evidence supports the finding that the knoll from which the mare and colt were first observed was not on Deeg's property, we need not consider the alternative argument that Deeg consented to the search by inviting the deputies onto his property. For the same reason, we need not consider the alternative arguments that there is a good faith exception to the search and seizure rule against trespass to obtain evidence and that the deputies believed in good faith that they were not on Deeg's property.

¶10 We next consider whether, after the District Court suppressed evidence gathered while the officers were on Deeg's property, the affidavit in support of the application for a search warrant contained sufficient information to provide probable cause to issue a warrant. The officers' testimony at the District Court hearing supports a conclusion that the reference in the affidavit to "approximately 100 head of horses, several of which appeared to be starving" relates to observations made on Deeg's property and must therefore be excised. The appropriate standard of review of a probable cause determination after information has been excised from the supporting affidavit was clarified in *State v. Kuneff*, 1998 MT 287, ¶ 19, 291 Mont. 474, ¶ 19, 970 P.2d 556, ¶ 19: the reviewing court must conduct a *de novo* review of the remaining information in the affidavit, to determine whether probable cause supported the issuance of a search warrant.

¶11 The affidavit states that the deputies had been told about, and had then observed for themselves, a mare and a new foal in severe distress at Deeg's place. The affiant deputy stated his belief that both horses would likely die as a result of maltreatment. The affidavit says that both deputies had for many years raised and cared for horses and that based on that experience it was the affiant's opinion that Deeg had without justification severely mistreated his horses by failing to provide them with proper food or appropriate medical care. We conclude that the above information provided the justice of the peace with probable cause to issue a search warrant.

¶12 Deeg also argues that the warrant issued by the Carbon County Justice Court to search his property is over broad in that it fails to particularly describe who or what is to be seized, as required under § 46-5-221(4), MCA. In making this argument, he does not refer specifically to any particular language in the warrant.

¶13 The affidavit for a search warrant included a legal description of the real property

occupied by Deeg, and described the property "referred to, sought to be seized, and or photographed" as "consist[ing] of several horses which appear to be dead or near death from maltreatment." The search warrant itself gave a legal description of Deeg's real property, "including all out buildings and corrals on the property," and stated that the application was to search for "certain items of personal property which are evidence of the crime of: Cruelty to Animals, a misdemeanor, in violation of § 45-8-211, Mont. Code Ann." The warrant then authorized a search for "any property which is evidence in the crimes described above."

¶14 We have refused to consider bald assertions of error in criminal proceedings. *State v. Austad* (1982), 197 Mont. 70, 97, 641 P.2d 1373, 1388. Given the lack of specificity of Deeg's challenge to the search warrant, his failure to identify any language therein which would authorize wholesale rummaging through his belongings, and the language of the search warrant itself, we decline to consider this issue further.

¶15 Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER