No. 02-545

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 51

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ROBERT DONALD HART,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 01-0142
The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Chris J. Nelson, Attorney at Law, Billings, Montana

        For Respondent:

        Hon. Mike McGrath, Montana Attorney General, John Paulson, Assistant
Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County
Attorney, Sheila R. Kolar, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  January 30, 2003

Decided:  March 2, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Robert Donald Hart (Hart) appeals the judgment of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to suppress.

¶2     We address the following issues on appeal and affirm:

¶3     1.     Did the canine sniff around the exterior of Hart's vehicle constitute a search?

¶4     2.     Was the search warrant issued for searching Hart's vehicle supported by probable cause?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5     On February 7, 2001, Deputy Shane Skillen (Skillen) and K-9 Officer, Sergeant Vince Wallis (Wallis) separately approached Hart's residence. The officers had an arrest warrant for Hart for felony criminal sale of dangerous drugs.

¶6     As they approached Hart's residence in an attempt to serve the arrest warrant on Hart, they observed Hart driving in the opposite direction. Skillen initiated a traffic stop and Wallis pulled his patrol car alongside of Hart's van.

¶7     At this point, both officers observed Hart make furtive movements, namely Hart turned his body quickly, dropping his body toward the floorboard of the van. The officers and the District Court characterized this movement as a "dive."

¶8     The officers feared that Hart was attempting to retrieve a weapon or to hide or throw something into the back of the van, so Skillen ordered that Hart place his hands on the vehicle. Hart did so and Skillen then removed Hart from the van, advised him of the arrest warrant, and placed him under arrest.

2

¶9     The officers then asked Hart for his consent to search the van.  Hart refused consent.  Wallis then walked his drug-detecting canine, Trooper, around Hart's van.  Trooper alerted, indicating the presence of the odor of dangerous drugs.

¶10    The officers requested a telephonic search warrant, which District Court Judge Diane Barz issued.  The subsequent search of Hart's van resulted in confiscation of a digital scale box, a baggy of methamphetamine, and two "bricks" of marijuana weighing approximately two pounds.

¶11    Hart moved to suppress the evidence seized from the van.  After a hearing, Hart's motion was denied.

¶12    Subsequently, Hart pled guilty to the charges contained in the information, reserving his right to appeal the denial of his motion to suppress.  Hart was sentenced to a five-year suspended sentence.

¶13    Hart now appeals the District Court's denial of his motion to suppress.

**STANDARD OF REVIEW**

¶14    We review a district court's findings of fact to determine whether they are clearly erroneous.  *State v. Logan*, 2002 MT 206, ¶ 12, 311 Mont. 239, ¶ 12, 53 P.3d 1285, ¶ 12.  We review a district court's conclusions of law for correctness.  *Logan*, ¶ 12.  Because the facts here are undisputed, our review is limited to whether the District Court's application and interpretation of the law was correct.

**DISCUSSION**

¶15    **1.     Did the canine sniff around the exterior of Hart's vehicle constitute a**

**search?**

¶16 Hart argues that the canine sniff around the exterior of his private vehicle, without his consent and before a search warrant was issued, constituted an unlawful search. In support of his argument, Hart contends that as this Court held in *State v. Elison*, 2000 MT 288, 302 Mont. 228, 14 P.3d 456, it is reasonable for him to expect the contents of his vehicle to remain private, especially under Montana's constitutional right to privacy provision. Hart likens the canine sniff to the invasion this Court struck down in *State v. Siegal* (1977), 281 Mont. 250, 934 P.2d 176, *overruled on other grounds by State v. Kuneff*, 1998 MT 287, ¶ 19, 291 Mont. 474, ¶ 19, 970 P.2d 556, ¶ 19, regarding the use of thermal imaging. He argues that there exists no distinction between "molecules in the air surrounding an enclosure [such as his van] and collecting infrared radiation emitted from a building [the issue presented in *Siegal*]." Hart also insists that the canine sniff of his van is not similar to the canine sniff of luggage, insofar as the contents of his van are not as knowingly exposed to the public as a person's luggage is.

¶17 The State of Montana (the State) contends that Hart does not have the same degree of privacy in the contents of his van as he does in the contents of his home because the odors emanating from his van are knowingly exposed to the public, much as they were from the luggage in *State v. Scheetz* (1997), 286 Mont. 41, 950 P.2d 722. In addition, the State contends that Hart's reliance on *Siegal* is inapposite, as this Court in *Siegal* distinguished between the use of thermal imaging devices and the use of drug-detecting canines. Specifically, the State argues that because thermal imagers provide both legal and illegal

4

information, whereas canine sniffs only provide information regarding the presence of illegal substances, the canine sniff of Hart's van was "much less intrusive and more limited than a typical search." Further, the State contends that Hart cites no authority for his proposition that furtive movements do not provide sufficient particularized suspicion for additional investigation, including a canine sniff.

¶18　We recently addressed an issue similar to the one presented here in *State v. Tackitt*, 2003 MT 81, 315 Mont. 59, 67 P.3d 295. Specifically, in *Tackitt*, we were asked to decide whether "the use of a drug-detecting canine to sniff for drugs in a vehicle parked in an area accessible to the public" was a search. *Tackitt*, ¶ 12.

¶19　The defendant's car in *Tackitt* was parked at his residence. Acting on an anonymous tip, an officer used a drug-detecting canine to conduct a sniff survey of the defendant's car while it was parked at his residence. The canine alerted, indicating the presence of the odor of dangerous drugs. The subsequent search of the defendant's vehicle did not reveal any evidence, although the search of his home did. This evidence was used in charging the defendant with criminal possession of dangerous drugs, a charge to which the defendant pled guilty after the district court denied his motion to suppress the evidence seized. *Tackitt*, ¶¶ 5-10.

¶20  As we discussed in *Tackitt*, substantial case law exists on the legality of canine sniffs with regard to search and seizure law. *See Tackitt*, ¶¶ 26-28. However, upon review of these cases, we determined that "the better reasoned cases allow for a carefully drawn exception to the warrant requirement, but still require particularized suspicion when the area or object subject to the canine sniff is already exposed to the public." *Tackitt*, ¶ 29. We held that "given the greater protection afforded individual privacy under Montana's Constitution, the balance between governmental interests [in discouraging illegal drug trafficking] and individual [privacy] interests . . . can best be struck by requiring particularized suspicion as a prerequisite for the use of a drug-detecting canine." *Tackitt*, ¶ 29.

¶21  Here, the officers initially approached Hart's residence in order to serve an arrest warrant on him for felony criminal sale of dangerous drugs. After seeing Hart driving in the opposite direction, Skillen initiated a traffic stop. At that point, both officers saw furtive movements from Hart, namely Hart moving his body quickly towards the floorboard of the van. The officers believed that Hart was either attempting to retrieve a weapon or to hide or throw something into the back of the van. Under the circumstances and given the fact that the officers were attempting to execute an arrest warrant for felony drug charges, it was reasonable for the officers to infer that Hart was in possession of illegal drugs contained in the van. We conclude that on these objective facts, the officers had particularized suspicion to perform the canine sniff around Hart's vehicle for the presence of illegal drugs. Therefore we hold that while the exterior canine sniff of Hart's vehicle did constitute a search, *Tackitt* ¶ 22, the search was appropriately based on reasonable or particularized suspicion. *Tackitt*,

¶¶ 23-31.

¶22 **2. Was the search warrant issued for searching Hart's vehicle supported by probable cause?**

¶23 Hart also argues that the search warrant obtained by the officers was not supported by probable cause. Specifically, he argues that the odors emanating from his vehicle cannot alone establish probable cause under this Court's holding in *State v. Schoendaller* (1978), 176 Mont. 376, 578 P.2d 730 (smell of marijuana smoke emanating from vehicle was an insufficient basis to establish probable cause).

¶24 The State contends that Hart's argument is raised for the first time now on appeal, and therefore this Court should decline to address it. In the alternative, the State contends that *Schoendaller* is distinguishable here because *Schoendaller* did not "address or discuss the significance of an alert by a trained drug-detecting dog in the context of a probable cause determination." We decline to address Hart's *Schoendaller* argument because it is raised for the first time on appeal. *State v. Weaselboy*, 1999 MT 274, ¶ 16, 296 Mont. 503, ¶ 16, 989 P.2d 836, ¶ 16. We still must determine, however, whether the issuance of the search warrant was supported by probable cause.

¶25 Both the United States and Montana Constitutions protect individuals from unreasonable searches and seizures. Amend. IV, U.S. Const.; Art. II, Sec. 11, Mont. Const. For a search warrant to issue, the application must state facts sufficient to show probable cause. *State v. Olson*, 2003 MT 61, ¶ 24, 314 Mont. 402, ¶ 24, 66 P.3d 297, ¶ 24.

¶26 Probable cause to search exists "if the facts and circumstances within the officer's

7

personal knowledge . . . are sufficient to warrant a reasonable person to believe that the suspect has committed an offense." *State v. Saxton*, 2003 MT 105, ¶ 26, 315 Mont. 315, ¶ 26, 68 P.3d 721, ¶ 26. Probable cause is evaluated in light of an officer's knowledge and all relevant circumstances. *State v. Van Dort*, 2003 MT 104, ¶ 19, 315 Mont. 303, ¶ 19, 68 P.3d 728, ¶ 19.

¶27 As discussed above, the officers had particularized suspicion to perform the canine search around Hart's vehicle. In so doing, Trooper alerted, indicating the presence of the odor of dangerous drugs. Wallis was a trained K-9 officer with experience in using drug-detecting canines. Given Wallis's experience, Trooper's alert, the fact that the officers were attempting to execute an arrest warrant charging Hart with felony criminal sale of dangerous drugs, and Hart's furtive movements at the time of the stop, we conclude that Wallis had facts that a reasonable person would find sufficient to believe Hart had committed an offense. Therefore, we hold that probable cause existed to support the issuance of the search warrant used in searching Hart's van.

¶28 We affirm the District Court's denial of Hart's motion to suppress the evidence obtained from the officers' search of his van.

/S/ JAMES C. NELSON

We Concur:

8

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM REGNIER


Justice Jim Rice specially concurring.

¶29    I concur in the Court's holding, but on the basis set forth in my concurring opinion in *State v. Tackitt*, 2003 MT 81, 315 Mont. 59, 67 P.3d 295.  I do not believe there is an expectation of privacy which society finds as objectively reasonable in contraband odors which are allowed to emanate into public places.  Neither do I believe there were other privacy interests at issue under the facts of this case which would have prohibited police employment of a canine sniff without a warrant.


                              /S/ JIM RICE