FILED

09/06/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0684

DA 14-0684

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 220

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

NICHOLAS ANDREW MARINO,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifteenth Judicial District, In and For the County of Roosevelt, Cause No. DC 13-18 Honorable David Cybulski, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Paul D. Sullivan, Measure, Sampsel, Sullivan & O'Brien, P.C., Kalispell, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant Attorney General, Helena, Montana

            Ralph J. Patch, Roosevelt County Attorney, Jordan W. Knudsen, Deputy County Attorney, Wolf Point, Montana

                  Submitted on Briefs: August 3, 2016

                         Decided: September 6, 2016

Filed:

_____
              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant Nicholas Andrew Marino (Marino) appeals the order of the Fifteenth Judicial District Court, Roosevelt County, denying his motion to suppress. We affirm.

¶2    We consider the following issue on appeal:

¶3    *Did the District Court err by concluding that law enforcement properly conducted a canine sniff of Marino's vehicle based upon particularized suspicion*?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    At approximately 1:30 a.m. on June 2, 2013, Marino drove his vehicle out of the Town Pump gas station in Wolf Point, Montana, without the headlights turned on. Noticing the lack of headlights, Deputy Sheriff Corey Reum (Deputy Reum) initiated a traffic stop of Marino's car. As Deputy Reum pulled closer to Marino's vehicle, he noticed the vehicle did not have a rear license plate. When Deputy Reum exited his vehicle and approached Marino's car on foot, he was unable to see inside Marino's vehicle with his flashlight because the windows were covered in extremely dark tinting.

¶5    Deputy Reum asked to see Marino's driver's license, but Marino was only able to produce a California identification card. Deputy Reum advised Marino that vehicles are required by law to display license plates. Marino replied that his vehicle's license plates were in the trunk of the car because, as testified to by Deputy Reum, "his girlfriend told him to take them off because they would attract attention to himself." Marino, with Deputy Reum's permission, then exited the vehicle to retrieve the plates from the trunk.

¶6    Marino walked to the trunk of the car, opened it, and leaned into the trunk to retrieve the plates. When Marino bent over, Deputy Reum noticed a sheath under

2

Marino's clothing. Deputy Reum told Marino to place his hands on the trunk for a pat down. Marino began to shake nervously as Deputy Reum began the search. Deputy Reum removed a large knife in a sheath concealed under Marino's shirt and handed it to another responding officer, Officer Mehin Wehbe (Officer Wehbe), of the Wolf Point Police Department. Deputy Reum continued his pat down and discovered a large lump in Marino's front pocket which he could not rule out as a weapon. Deputy Reum removed the object, which turned out to be a large roll of cash (later determined to be $2,914) attached to a Visa debit card. Deputy Reum then felt a strap on Marino's body that ran toward his armpit, and Marino informed him it was a concealed weapon. Deputy Reum ordered Marino to the ground and handcuffed him before safely removing the pistol from the concealed holster.

¶7 Deputy Reum had significant prior experience with narcotics investigations and concluded that indicators for drug trafficking were present. After placing Marino under arrest for carrying an unlicensed, concealed weapon, Deputy Reum brought his canine unit from his vehicle to check Marino's car for odors. The canine alerted near the rear of the vehicle. Marino's car was towed to the Roosevelt County Sheriff's Office and sealed with evidence tape. A search warrant was obtained and law enforcement discovered methamphetamine during the search of the vehicle.

¶8 Marino was charged with Criminal Possession of Dangerous Drugs with Intent to Distribute pursuant to § 45-9-103, MCA (2013), with a persistent felony offender designation under § 46-18-502, MCA. Marino moved to suppress the evidence seized in

3

the search of his car, arguing there was no particularized suspicion of wrongdoing involving narcotics sufficient to justify a canine sniff. The District Court denied the motion, concluding there were sufficient facts for Deputy Reum to reasonably believe Marino was engaged drug trafficking. Marino entered a plea agreement, admitting to the charge and to his status as a persistent felony offender, but reserving his right to appeal the District Court's denial of his motion to suppress. Marino appeals.

## STANDARD OF REVIEW

¶9 We review a district court's denial of a motion to suppress to determine whether the findings of fact are clearly erroneous and whether the court's interpretation and application of the law was correct. *State v. Goetz*, 2008 MT 296, ¶ 9, 345 Mont. 421, 191 P.3d 489 (citing *State v. Copelton*, 2006 MT 182, ¶ 8, 333 Mont. 91, 140 P.3d 1074). A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *State v. Ellis*, 2009 MT 192, ¶ 20, 351 Mont. 95, 210 P.3d 144 (citing *State v. Lewis*, 2007 MT 295, ¶ 17, 340 Mont. 10, 171 P.3d 731).

## DISCUSSION

¶10 Marino argues that the use of a canine sniff on his vehicle was a warrantless search that must be supported by a warrant exception, and that all such exceptions, including the canine sniff in this case, must be justified by exigent circumstances, citing *State v. Hardaway*, 2001 MT 252, 307 Mont. 139, 36 P.3d 900. As such, Marino argues

4

the canine sniff of his car was improper because no exigent circumstances remained after Deputy Reum removed any potential threat by arresting and placing Marino in handcuffs. The State argues that our reasoning in *State v. Tackitt*, 2003 MT 81, 315 Mont. 59, 67 P.3d 295, where we held that canine searches of constitutionally protected areas need only be supported by particularized suspicion, controls the outcome in this case.

¶11    Marino is correct that a canine search of a container in which a person has a reasonable expectation of privacy is a search.  That is the essence of the first part of our holding in *Tackitt*.  *Tackitt*, ¶ 20.  However, the State accurately explains the second part of our holding in *Tackitt*, that law enforcement needs only particularized suspicion to conduct a canine search without a warrant.  *Tackitt*, ¶ 31.

**Drug-Canine Exception to the Warrant Requirement**

¶12    "The threshold question in a search case is whether there is an expectation of privacy which society is prepared to recognize as objectively reasonable."  *Tackitt*, ¶ 17 (citing *State v. Scheetz*, 286 Mont. 41, 46, 950 P.2d 722, 724 (1997)).  If there is a reasonable expectation of privacy, the nature of the state's intrusion must also be reasonable.  *Tackitt*, ¶ 17.  Regarding automobiles in particular, "when a person stores something in a concealed area of a vehicle and seeks to preserve their privacy, that privacy has constitutional protections."  *Tackitt*, ¶ 20; *accord State v. Elison*, 2000 MT 288, ¶ 51, 302 Mont. 228, 14 P.3d 456.  As such, a search—including a canine sniff—of the concealed areas of a vehicle is subject to constitutional protections.  *Tackitt*, ¶ 22;

5

*State v. Hart*, 2004 MT 51, ¶¶ 20–21, 320 Mont. 154, 85 P.3d 1275; *State v. Meza*, 2006 MT 210, ¶ 22, 333 Mont. 305, 143 P.3d 422.

¶13 Generally, warrantless searches are per se unreasonable subject to a few, narrowly drawn exceptions. *Elison*, ¶ 39; *State v. Munson*, 2007 MT 222, ¶ 50, 339 Mont. 68, 169 P.3d 364. One of those exceptions, as we established in *Tackitt*, is the use of a drug or narcotic detecting canine where law enforcement has particularized suspicion and the odors from the searched container are exposed in the public. *Tackitt*, ¶ 29; *accord Hart*, ¶¶ 20–21; *State v. Stoumbaugh*, 2007 MT 105, ¶ 18, 337 Mont. 147, 157 P.3d 1137.

¶14 As we noted in *Tackitt*, government has a significant interest in discouraging illegal drug trafficking. *Tackitt*, ¶ 29. Discovering illegal drug trafficking is often difficult because it involves activities that usually appear innocent and trafficking, by its nature, is inherently transient. *Tackitt*, ¶ 29. Canine sniffs are far less intrusive than an actual, physical search of a space because a sniff only examines the odors on the exterior of the container. *Tackitt*, ¶ 29; *Meza*, ¶ 22. Further, unlike thermal scans, *State v. Siegal*, 281 Mont. 250, 274–75, 934 P.2d 176, 190–91 (1997) (noting thermal scans do not differentiate between legal and illegal activities), *overruled in part on other grounds*, *State v. Kuneff*, 1998 MT 287, ¶¶ 18–19, 291 Mont. 474, 970 P.2d 556, a canine sniff is both selective and accurate because the canine only alerts on the presence of the contraband it has been trained to detect. *Tackitt*, ¶ 29. As such, the minimally intrusive and accurate nature of a canine sniff supported by particularized suspicion appropriately

6

balances the enhanced individual privacy interests under the Montana Constitution with governmental interests. *Tackitt*, ¶ 29.

¶15 Marino argues that an exigency requirement should be implied in all warrantless searches based on our holding in *Hardaway*. However, Marino appears to confuse the requirements for the drug canine warrant exception with the individual requirements for the search incident to arrest, automobile, exigency, and plain view warrant exceptions. *Hardaway* held the search incident to arrest exception implied an exigency requirement only for § 46-5-102(4), MCA. *Hardaway*, ¶ 57. As our case law demonstrates, these warrant exceptions are separate and independent, and each exception has its own requirements. *E.g.*, *Elison*, ¶ 43 (automobile); *State v. Wakeford*, 1998 MT 16, ¶¶ 22–24, 287 Mont. 220, 953 P.2d 1065 (exigent circumstances); *State v. Bassett*, 1999 MT 109, ¶¶ 52–53, 294 Mont. 327, 982 P.2d 410 (plain view). There is no uniform requirement for all warrant exceptions that exigency must always be present. Accordingly, exigent circumstances need not be established before law enforcement may conduct a canine sniff search. Rather, law enforcement may conduct a canine sniff search of a container in which a person has a reasonable expectation of privacy if (1) the officers have particularized suspicion; and (2) the odors from that container are freely exposed to the public. *Tackitt*, ¶ 31.

¶16 Marino had a reasonable expectation of privacy in the concealed contents of his car and the canine sniff of his car was a warrantless search. However, the odors at question were freely exposed to the public because Marino's vehicle was on a public

road.  As such, we must examine whether Deputy Reum had particularized suspicion to conduct the canine sniff of Marino's car.

**Particularized Suspicion to Conduct a Drug-Canine Sniff**

¶17    Particularized suspicion requires "(1) objective data from which an experienced police officer can make certain inferences; and (2) a resulting suspicion that the person is or has been engaged in wrongdoing." *Stoumbaugh*, ¶ 18.  "Whether a particularized suspicion exists represents a question of fact determined by examining the totality of circumstances surrounding the investigation stop."  *Meza*, ¶ 25.  "In evaluating the totality of the circumstances, a court should consider the quantity, or content, and quality, or degree of reliability, of the information available to the officer."  *State v. Pratt*, 286 Mont. 156, 161, 951 P.2d 37, 40 (1997) (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)).

¶18    In *Tackitt*, we determined that particularized suspicion was lacking because the informant was anonymous and unconfirmed, and police investigation verified only innocent public information and stale prior convictions.  *Tackitt*, ¶¶ 34–41.  However, in *Hart*, we affirmed the district court's finding of particularized suspicion for a canine search where the officers approached the defendant's home to serve an arrest warrant for felony criminal sale of dangerous drugs, saw the defendant driving away, and, after pulling him over, observed furtive movements consistent with an individual attempting to either get a weapon or hide something.  *Hart*, ¶ 21.  Similarly, in *Meza*, we upheld the finding of particularized suspicion where the defendant illegally parked in the middle of

8

the street in front of a known narcotics operation, acted nervously when pulled over, and police dispatch informed the officer the defendant had a history of narcotics use. *Meza*, ¶¶ 24–25. Finally, in *Stoumbaugh*, we upheld a determination of particularized suspicion to use a canine search of a vehicle where the officers responded to a report of illegal drug use, the defendant's family disclosed the defendant's location in their home so the officers could arrest the defendant on pending arrest warrants, the defendant admitted to drug charges in Washington state, the police confirmed the felony drug charges, and the defendant urgently attempted to tow her vehicle away at a cost exceeding the value of the vehicle itself. *Stoumbaugh*, ¶¶ 21–24.

¶19    Here, the District Court did not err in determining that particularized suspicion existed to support the canine sniff of Marino's car. Marino was pulled over by Deputy Reum because he was driving without headlights at 1:30 a.m. Marino's car had extremely dark window tinting and did not have a rear license plate. When informed that his vehicle should have license plates, Marino told Deputy Reum that he had removed them, on the advice of his girlfriend, so he would not attract attention, thus implying he was attempting to avoid detection. Marino did not have a driver's license even though he was operating a vehicle. While Marino was retrieving the license plates, Deputy Reum noticed a sheath concealed under Marino's shirt. During the ensuing pat down of Marino, Deputy Reum discovered a concealed knife, a roll of cash in the amount of $2,914, and an unlicensed, concealed weapon.

¶20   As such, Deputy Reum had sufficient, objective information to suspect that Marino was engaged in illegal narcotics trafficking.   Whether particularized suspicion exists is a question of fact determined by the totality of the circumstances.   *Meza*, ¶ 25. On these facts, the District Court correctly determined there was particularized suspicion to support the canine search of Marino's car.

¶21   Affirmed.


                                        /S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ PATRICIA COTTER


                                        10