FILED

12/20/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0478

DA 15-0478

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 332

STATE OF MONTANA,

> Plaintiff and Appellee,

v.

JEFFREY DAVID BEAVER,

> Defendant and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DC-15-007
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:
>
> > Chad Wright, Chief Appellate Defender, Moses Okeyo, Assistant
> > Appellate Defender, Helena, Montana
>
> For Appellee:
>
> > Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
> > Assistant Attorney General, Helena, Montana
> >
> > Joe Coble, Teton County Attorney, Choteau, Montana

Submitted on Briefs: November 16, 2016

Decided: December 20, 2016

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Jeffrey David Beaver appeals from the District Court's Judgment & Sentence filed July 29, 2015, convicting him of aggravated driving under the influence, second offense. We affirm.

¶2 We restate the issue on appeal as follows:

*Whether the District Court erred in upholding the stop and the ensuing warrantless inspection of Beaver's truck by an officer of the Montana Department of Transportation.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 On August 12, 2014, an officer of the Motor Carrier Services Division, Montana Department of Transportation (MDT), stopped Beaver's commercial freightliner vehicle in Teton County. After making the stop the officer detected the odor of alcohol and believed that Beaver was driving under the influence. He used a portable breath test (PBT) device and it showed that Beaver's breath alcohol concentration (BAC) was over 0.08. He also found alcoholic beverage bottles and cans in the vehicle.

¶4 The MDT officer called the Montana State Highway Patrol for assistance. A highway patrolman arrived and conducted field sobriety tests that indicated that Beaver could be impaired. A second PBT administered by the patrolman showed a BAC over 0.160. Beaver refused a blood test, and the patrolman obtained a search warrant for a blood sample. That sample registered a BAC of 0.239. The State charged Beaver with driving under the influence and several other misdemeanor offenses.

¶5 The Teton County Justice Court conducted a bench trial in January 2015. At the conclusion of the trial the Justice of the Peace found Beaver guilty of aggravated driving under the influence with a BAC of 0.239 under § 61-8-465, MCA. The Justice of the Peace imposed a fine and a sentence of a year in the county jail with all but seven days suspended.

¶6 Beaver appealed to District Court and moved to suppress the evidence gathered after the MDT officer stopped his vehicle. The District Court denied the motion, citing a prior order of the Teton County District Court in *State v. Valline*, Cause No. DA-10-021. Beaver entered a guilty plea to the DUI charge, reserving the right to appeal denial of the motion to suppress.[1] The District Court sentenced Beaver to a fine and to one year in the Teton County Jail with all but seven days suspended.

¶7 Beaver appeals.

**STANDARD OF REVIEW**

¶8 This Court reviews a district court's decision on a motion to suppress to determine whether the findings of fact meet the clearly erroneous standard, and whether the application of law was correct. *State v. Marino*, 2016 MT 220, ¶ 9, 384 Mont. 490, 380 P.3d 763.

---

[1] The Justice Court also convicted Beaver of the misdemeanors of driving with a suspended license, possessing alcohol in a commercial vehicle, and failure to pay commercial vehicle fees. The State dismissed these misdemeanor charges in the subsequent proceedings in District Court.

## DISCUSSION

¶9 *Whether the District Court erred in upholding the stop and the ensuing warrantless inspection of Beaver's truck by an officer of the Montana Department of Transportation.*

¶10 The issue in this case is whether the MDT officer needed particularized suspicion to initiate the stop of Beaver's truck as provided in § 46-5-401, MCA. We conclude that the officer did not need a fact-based particularized suspicion to stop and inspect the truck because it was a commercial vehicle subject to close regulation by law.

¶11 The factual record in this case is sparse. The only findings of fact are those that the Justice Court made. The Justice Court found that Beaver was driving a "white, Freightliner, commercial vehicle over 52,000 pounds" when the MDT Motor Carrier Services officer stopped him "in order to conduct a safety inspection." The Justice Court found that after the stop the MDT officer detected the odor of alcohol from Beaver, and observed alcoholic beverage containers in the cab. The Justice Court found that the preliminary breath test administered by the MDT officer indicated a BAC over 0.08, and that Beaver's driving privileges were suspended after a 2012 DUI conviction. The Justice Court found that a Montana Highway Patrol officer responded and "conducted the DUI investigation," including a field sobriety test and another breath sample, indicating a BAC over 0.160. The Justice Court found that the patrolman obtained a search warrant for Beaver's blood, which resulted in a BAC of 0.239.

¶12 The Fourth Amendment's prohibition of unreasonable searches and seizures is applicable to commercial premises as well as to private homes, and applies to both police searches and to "administrative inspections designed to enforce regulatory statutes." *New*

4

*York v. Berger*, 482 U.S. 691, 699, 107 S. Ct. 2636, 2642 (1987). However, an individual's expectation of privacy in commercial premises is "different from, and indeed less than, a similar expectation in an individual's home." *Berger*, 482 U.S. at 700, 107 S. Ct. at 2642. As to persons engaged in "closely regulated" enterprises with significant government oversight, the law recognizes that there is "no reasonable expectation of privacy." *Berger*, 482 U.S. at 700, 107 S. Ct. at 2642. Courts have found that the closely regulated enterprise exception to the Fourth Amendment applies to the liquor industry, to pawnshops, to interstate firearms sellers, to the mining industry, and to auto salvage. *Berger*, 482 U.S. at 700-01, 107 S. Ct. at 2642-43.

¶13 The legal underpinning of the closely regulated enterprise exception to the Fourth Amendment is that the reasonableness requirements for a governmental search have "lessened application" because the privacy interests of the owner are "weakened" and the governmental interest in regulation is "heightened." *Berger*, 482 U.S. at 702, 107 S. Ct. at 2644. A warrantless governmental action in the closely regulated enterprise context will be "deemed to be reasonable" if there is a substantial governmental interest in the applicable regulatory scheme; if warrantless inspections are necessary to further the regulatory scheme; and if the regulatory scheme advises affected persons that the inspection is made pursuant to law which properly defines its scope. *Berger*, 482 U.S. at 702-03, 107 S. Ct. at 2644. Numerous Federal Circuits have recognized that commercial trucking is a closely regulated enterprise subject to these rules. *U.S. v. Delgado*, 545 F.3d 1195, 1201 (9th Cir. 2008). The Ninth Circuit has concluded that "the myriad federal and state statutes that govern commercial trucking place it squarely within the class of

5

industries to which *Berger* applies." *Delgado*, 545 F.3d at 1202. "[W]arrantless inspection of commercial vehicles 'advances a substantial government interest' and is 'necessary to further the regulatory scheme.'" *Delgado*, 545 F.3d at 1202. The *Delgado* Court upheld the warrantless stop of Delgado's truck because trucking is a closely regulated enterprise under state law. *Delgado*, 545 F.3d at 1203.

¶14 It is clear that commercial trucking is a closely regulated enterprise in Montana and that the *Berger* rule applies to stops and inspections of commercial trucking. Commercial trucking is subject to extensive federal oversight found in Title 49 of the Code of Federal Regulations. Montana law contains comprehensive and detailed regulations applicable to commercial vehicles. These cover allowable vehicle widths (§ 61-10-102, MCA); vehicle heights (§ 61-10-103, MCA); vehicle length (§ 61-10-104, MCA); and maximum vehicle gross weight (§ 61-10-107, MCA). Montana law provides for coordination with federal requirements concerning vehicle gross weight, axle load, and size. Section 60-10-110, MCA.

¶15 Montana law authorizes MDT to adopt safety standards for commercial vehicles, which must substantially comply with federal motor carrier safety and hazardous material regulations. Section 61-10-154(2) and (3), MCA. MDT adopted detailed regulations applicable to commercial trucking. Admin. R. M. 18.8.101 through .1506. Those regulations cover the "safety inspection program" that authorizes "roadside inspection of commercial motor vehicles for compliance with federal and state safety requirements." Admin. R. M. 18.8.1506. Montana law requires MDT to coordinate with the Montana Highway Patrol to enforce safety standards in order to maximize coordination and

minimize duplication. Section 61-10-154(4), MCA. The regulations require MDT to enforce safety standards through its employees that it designates as "peace officers." Those officers may issue citations and make arrests for violations of safety standards, and may make reasonable inspections of commercial cargo. Admin. R. M. 18.8.1461. The MDT officers may also enforce applicable federal regulations, including making "reasonable safety inspections of commercial motor vehicles." Section 61-10-154(5), MCA. Based upon these statutes, upon the authorized safety regulations, and upon the coordination and enforcement of federal requirements, it is clear that in Montana commercial trucking is a "closely regulated" industry under *Berger*.

¶16 It is also clear that warrantless inspections of commercial vehicles are necessary to enforce the applicable requirements related to size, length, weight, and other regulated aspects of the trade. These regulations are clearly intended to help insure the safety of the motoring public in general, and of those engaged in commercial trucking. It is evident that commercial vehicles can pass quickly through jurisdictions with safety violations that are not readily apparent and that would largely escape detection if states did not have the power, as Montana law provides, to stop those vehicles for safety inspections. *Delgado*, 545 P.3d at 1202. Section 61-10-141(1)(a), MCA, specifically provides that an MDT officer may require that the vehicle be driven to the nearest scale for purposes of having it weighed. These inspection powers clearly are necessary and serve a substantial governmental interest.

¶17 It is also evident that those involved in the commercial trucking industry are on notice that they are subject to inspections to determine compliance with statutes and

7

regulations. The adoption of statutes and regulations provides clear notice that there are extensive requirements applicable to commercial trucking activities, and that those activities are subject to inspection to ensure compliance. Inspections authorized by statute to determine compliance with discrete requirements are consistent with the requirements of *Berger*.

¶18 Because commercial trucking is a closely regulated activity in Montana, and because Montana's regulatory scheme complies with the notice and focus requirements of *Berger*, the MDT officer in this case was authorized to stop Beaver's vehicle for inspection without a warrant and without particularized suspicion of a violation. After detecting evidence that Beaver might be under the influence of alcohol, the officer was authorized to make further investigation and to enlist the assistance of the Highway Patrol as a matter of public safety. After the initial stop of Beaver's truck, evidence of his consumption of alcohol (the alcoholic beverage containers) was in plain view in the truck and could be seized and used in a subsequent prosecution. *State v. Loh*, 275 Mont. 460, 469, 914 P.2d 592, 597-98 (1996). When an officer is lawfully present and discovers evidence in plain view it may be seized and used against the defendant. *State v. Delao*, 2006 MT 179, ¶ 15, 333 Mont. 68, 140 P.3d 1065.

¶19 The MDT officer in this case acted properly and within the requirements of law in stopping Beaver's truck. The resulting evidence of a DUI offense was properly obtained. Beaver's conviction is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE