CHIEF JUSTICE GRAY
delivered the Opinion of the Court.
¶1 Michael Thaddeus Goetz (Goetz) and Joseph Patrick Hamper (Hamper) (collectively, the Defendants) appeal from the judgments entered by the Eighteenth Judicial District Corut, Gallatin County, on their respective convictions for felony criminal distribution of dangerous drugs. Specifically, the Defendants challenge the District Court’s denial of their motions to suppress evidence. We reverse and remand.
¶2 We address the following issue:
¶3 Were the Defendants’ rights under Article II, Sections 10 and 11 of the Montana Constitution violated by the warrantless electronic monitoring and recording of their one-on-one conversations with confidential informants, notwithstanding the confidential informants’ consent to the monitoring?
BACKGROUND
¶4 In light of the identical primary legal issue raised in these two appeals, we consolidated the cases for purposes of oral argument and resolution. The following sets forth the relevant factual and procedural background of the individual cases.

State v. Goetz

¶5 On May 19, 2004, Matt Collar (Collar), a detective with the Missouri River Drug Task Force (Task Force), made contact with *424 Suzanne Trusler (Trusler), who previously had agreed to act as a confidential informant for the Task Force. Trusler informed Collar she had arranged to purchase a gram of methamphetamine from Goetz. Trusler then met with Collar and Detective Travis Swandal (Swandal) and allowed them to outfit her with a body wire receiving device. The detectives did not seek or obtain a search warrant authorizing use of the body wire. Collar gave Trusler $200 with which to purchase the drug. Trusler then went to Goetz’s residence and purchased methamphetamine from him. The conversation between Goetz and Trusler during the drug transaction was monitored and recorded by the detectives via Trusler’s body wire. Goetz was unaware of, and did not consent to, the electronic monitoring and recording of his conversation with Trusler.
¶6 The State of Montana (State) subsequently charged Goetz by information with the offense of felony criminal distribution of dangerous drugs. In the information, the State listed Collar and Swandal as witnesses to be called at trial. The State also advised Goetz that it intended to introduce the tape recording of his and Trusler’s conversation, and a transcript of the recording, into evidence at trial. Goetz moved the District Court to suppress the evidence derived from the electronic monitoring and recording of the conversation on the basis that it violated his rights to privacy and to be free from unreasonable searches and seizures as guaranteed by Article II, Sections 10 and 11 of the Montana Constitution. The District Court held a hearing and subsequently denied the motion to suppress. Goetz then pled guilty to the charged offense, expressly reserving his right to appeal the District Court’s denial of his suppression motion.

State v. Hamper

¶7 On August 4, 2004, Collar made contact with Chrystal White (White), who previously had agreed to act as a confidential informant with the Task Force. White informed Collar that she had arranged to purchase 1/8 ounce of marijuana for $50 from Hamper. White met with Collar and Swandal and allowed the detectives to outfit her with a body wire receiving device. Collar provided White with $50 to purchase the marijuana. White met Hamper in a parking lot and purchased marijuana from him. The drug transaction took place in White’s vehicle and the conversation between White and Hamper was monitored and recorded by the detectives via White’s body wire. The following day, White again contacted Collar and informed him she had arranged to purchase another 1/8 ounce of marijuana from Hamper for *425 $50. White met with Collar and Swandal and again allowed them to outfit her with a body wire. White then went to Hamper’s residence and purchased marijuana from him. Again, the conversation between White and Hamper regarding the drug transaction was electronically monitored and recorded by the detectives via White’s body wire. The detectives did not seek or obtain search warrants authorizing the electronic monitoring or recording of either conversation. Hamper was unaware of, and did not consent to, the electronic monitoring and recording of either conversation.
¶8 The State subsequently charged Hamper by information with two counts of felony criminal distribution of dangerous drugs. The State indicated its intent to call Collar and Swandal as witnesses at trial, and also indicated its intent to introduce the recordings of the two conversations-and transcripts of those recordings-into evidence at trial. Hamper moved to suppress evidence obtained via the electronic monitoring and recording of the two conversations on the basis that it violated his rights to privacy and to be free from unreasonable searches and seizures as guaranteed by Article II, Sections 10 and 11 of the Montana Constitution. The District Court held a hearing and subsequently denied Hamper’s motion to suppress. Hamper then pled guilty to the charged offenses, expressly reserving his right to appeal the denial of his suppression motion.
STANDARD OF REVIEW
¶9 We review a district court’s denial of a criminal defendant’s motion to suppress evidence to determine whether the court’s findings of fact are clearly erroneous and its interpretation and application of the law correct. State v. Copelton, 2006 MT 182, ¶ 8, 333 Mont. 91, ¶ 8, 140 P.3d 1074, ¶ 8. Here, the parties do not dispute the District Court’s relevant findings of fact. Consequently, we review only whether the court correctly interpreted and applied the law.
DISCUSSION
¶10 Were the Defendants’ rights under Article II, Sections 10 and 11 of the Montana Constitution violated by the warrantless electronic monitoring and recording of their one-on-one conversations with confidential informants, notwithstanding the confidential informants’ consent to the monitoring?
¶11 The Defendants’ motions to suppress relied primarily on State v. Solis, 214 Mont. 310, 693 P.2d 518 (1984), in which this Court determined that the warrantless electronic monitoring and recording *426 of the defendant’s conversations with an undercover law enforcement officer violated the defendant’s rights under Article II, Sections 10 and 11 of the Montana Constitution, notwithstanding the undercover officer’s consent to the monitoring. The State countered that, under State v. Brown, 232 Mont. 1, 755 P.2d 1364 (1988), the electronic monitoring of a conversation between two people, with the consent of one of them, does not constitute a search subject to the search warrant requirement.
¶12 The District Court recognized the conflict between Solis and Brown, and noted our own observation, in State v. Hardaway, 2001MT 252, ¶ 51, 307 Mont. 139, ¶ 51, 36 P.3d 900, ¶ 51, of jurisprudential inconsistencies in privacy law cases from the mid-1980s through the early 1990s. Determining stare decisis required the application of Brown, the District Court denied the motions to suppress. It concluded the Defendants did not have a reasonable expectation of privacy in their conversations with the confidential informants and, thus, the electronic monitoring of the conversations by use of body wire transmitting devices did not violate the Defendants’ rights of privacy or to be free from unreasonable searches and seizures. The Defendants assert legal error.
¶13 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect citizens against unreasonable searches and seizures. The Defendants do not dispute that, pursuant to United States Supreme Court jurisprudence, warrantless electronic monitoring of face-to-face conversations, with the consent of one party to the conversation, does not constitute a search and, therefore, does not violate the Fourth Amendment. See e.g. United States v. White, 401 U.S. 745, 91 S. Ct. 1122 (1971). They assert, however, that Article II, Sections 10 and 11 of the Montana Constitution afford citizens a greater right to privacy which, in turn, provides broader protection than the Fourth Amendment in situations involving searches and seizures occurring in private settings.
¶14 Article II, Section 10 of the Montana Constitution provides that “[t]he right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.” Article II, Section 11 of the Montana Constitution provides that
[t]he people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be *427 seized, or without probable cause, supported by oath or affirmation reduced to writing.
We address Article II, Section 10 in conjunction with Article II, Section 11 in analyzing and resolving a search or seizure issue that specifically implicates the right to privacy. See e.g. Hardaway, ¶ 32; State v. Siegal, 281 Mont. 250, 264-65, 934 P.2d 176,184-85 (1997) (overruled in part in State v. Kuneff, 1998 MT 287, ¶ 19,291 Mont. 474, ¶ 19,970 P.2d 556, ¶ 19). Furthermore, “[i]n light of the constitutional right to privacy to which Montanans are entitled, we have held that the range of warrantless searches which may be lawfully conducted under the Montana Constitution is narrower than the corresponding range of searches that may be lawfully conducted pursuant to the federal Fourth Amendment.” Hardaway, ¶ 35.
I. Solis and Brown
¶15 Given the parties’ and the District Court’s understandable reliance in this case on early Montana privacy and search and seizure jurisprudence as set forth in Solis and Brown, we begin with a discussion of those cases. In Solis, law enforcement employed an undercover officer to act as a pawnshop proprietor and, with the officer’s consent, videotaped certain events in the pawnshop. On numerous occasions, Solis was videotaped selling merchandise-some of which apparently was stolen-to the undercover officer. The State charged Solis with theft and intended to rely at trial on the videotapes and testimony from the officers running the taping machine rather than any testimony from the undercover officer who consented to the videotaping. Solis, 214 Mont, at 312-13, 693 P.2d at 519.
¶16 On appeal from the trial court’s suppression of the videotapes and testimony, we addressed whether the State violated Solis’s right to privacy under Article II, Section 10 of the Montana Constitution. First, we set forth the test for determining whether an individual has a constitutionally protected right of privacy as (1) does the individual have an actual or subjective expectation of privacy? and, if so, (2) is that expectation of privacy one which society is willing to view as reasonable? Solis, 214 Mont, at 314,693 P.2d at 520 (citing Missoulian v. Board of Regents of Higher Educ., 207 Mont. 513,522, 675 P.2d 962, 967 (1984)). We concluded the defendant exhibited an actual expectation of privacy by holding his conversations with the undercover officer in a small, enclosed office within the pawnshop with only a personal friend of the defendant present, and this expectation of privacy was reasonable because there were no areas from which *428 other individuals could have overheard the conversations. Solis, 214 Mont, at 314, 693 P.2d at 520. On the privacy versus electronic monitoring issue, we held that “in face-to-face encounters in a private setting, there is a reasonable expectation that hidden monitoring is not taking place.” Solis, 214 Mont, at 318, 693 P.2d at 522.
¶17 We next proceeded to the question of whether a compelling state interest justified infringing on Solis’s right under Article II, Section 10 of the Montana Constitution. We determined that a compelling state interest exists where the state is enforcing its criminal laws for the benefit and protection of its citizens, especially under the Solis circumstances where the suspect had engaged in repeated activity thought to be criminal. Even when a compelling interest in invading an individual’s privacy existed, however, we required that the procedural safeguards attached to the constitutional right to be free from unreasonable searches and seizures must first be met. In other words, “[t]he State was required to show probable cause to support the issuance of a search warrant.” Solis, 214 Mont, at 318-19, 693 P.2d at 522. The trial court having found no exigent circumstances precluding law enforcement from a reasonable opportunity to seek a search warrant, we held that the warrantless monitoring and recording of the defendant’s conversations with the undercover officer violated his right to be free from unreasonable searches. Solis, 214 Mont, at 319-20, 693 P.2d at 523.
¶18 Solis set forth an in-depth discussion and analysis of the right to privacy guaranteed by the Montana Constitution. However, only two Justices concurred in the holding based on application of the Montana Constitution. Three additional Justices concurred in the result of the decision, but relied on Katz v. United States, 389 U.S. 347, 88 S. Ct. 507 (1967), and other federal case law to determine that an unreasonable warrantless search occurred which was not justified by any exception to the warrant requirement. Solis, 214 Mont, at 320,693 P.2d at 523 (Sheehy & Weber, JJ., & Haswell, C.J., concurring). Consequently, Solis is not controlling precedent regarding application of Article II, Sections 10 and 11 of the Montana Constitution to the substantially similar circumstances of the present case.
¶19 The Court decided Brown in 1988, less than four years after Solis. In that case, law enforcement monitored and recorded three conversations between a suspect and an undercover police officer via a body wire transmitting device attached to the officer. The conversations took place in a vehicle in a parking lot, over the telephone and in a motel room rented by the undercover officer, and all *429 related to arranging and completing a single transaction for the sale of marijuana. Upon being charged with felony criminal sale of dangerous drugs, the defendant moved to dismiss the charge, arguing in part that the recording of her conversations without her knowledge was illegal. The trial court denied the motion to dismiss and the defendant appealed. Brown, 232 Mont, at 3-4, 755 P.2d at 1366.
¶20 In addressing the defendant’s face-to-face conversations in the vehicle and motel room, the Court noted the United States Supreme Court’s holding in White that warrantless electronic monitoring of face-to-face conversations-with the consent of one participant-does not violate the search and seizure provisions of the Fourth Amendment to the United States Constitution. The Court also recognized, however, that Article II, Section 10 of the Montana Constitution, in conjunction with Article II, Section 11, grants rights beyond those in the federal constitution and requires an independent analysis of privacy and search and seizure issues. Brown, 232 Mont, at 9-10, 755 P.2d at 1369-70.
¶21 The Brown Court observed that some violation of a person’s reasonable expectation of privacy must have occurred before the protections of Article II, Section 11 are implicated. The Court then determined-with little analysis and no citation to authority-that, while the defendant possessed a subjective expectation that her conversations with the undercover officer would remain private, her expectation of privacy was not reasonably justifiable and, consequently, no search or seizure occurred. Brown, 232 Mont, at 10, 755 P.2d at 1370. The Court further determined that the warrantless electronic monitoring and recording of a conversation with the consent of one participant did not violate Article II, Section 10 of the Montana Constitution. Brown, 232 Mont, at 11,755 P.2d at 1371. On that basis, the Court held that “warrantless consensual electronic monitoring of face-to-face conversations by the use of a body wire transmitting device, performed by law enforcement officers while pursuing their official duties, does not violate the right to be free of unreasonable searches and seizures nor the privacy section of the Montana Constitution.” Brown, 232 Mont, at 8, 755 P.2d at 1369. The Court’s prior holding in Solis was neither acknowledged nor overruled.
¶22 When discussing why the warrantless consensual electronic monitoring and recording of the conversation did not violate the defendant’s rights under the Montana Constitution in Brown, the Court cited United States Supreme Court cases and one legal commentator. Furthermore, while Brown did not expressly cite White, *430 the concepts contained in the discussion of the Montana Constitution in Brown appear to be taken directly from the Supreme Court’s rationale in that case. See White, 401 U.S. at 749-54, 91 S. Ct. at 1125-27; Brown, 232 Mont, at 10-11, 755 P.2d at 1370-71. Thus, notwithstanding our recognition in Brown that Article II, Sections 10 and 11 of the Montana Constitution, taken together, grant rights beyond those contained in the federal constitution, our resolution of that case merely paralleled federal jurisprudence on the subject and failed to properly analyze the greater rights guaranteed by Montana’s Constitution. Stated differently, having stated without equivocation that the Montana Constitution expressly provides more privacy protection than that inferred from the United States Constitution — with the corresponding obligation to provide an independent analysis under the Montana Constitution-we failed to follow through. See Brown, 232 Mont, at 10-11, 755 P.2d at 1370-71. Nor did we do so in the only two cases since 1988 in which we have cited Brown for its holding regarding the monitoring and recording of face-to-face conversations. See State v. Belgarde, 244 Mont. 500, 798 P.2d 539 (1990) and State v. Staat, 251 Mont. 1, 822 P.2d 643 (1991).
¶23 In more recent years, this Court has readily applied Article II, Section 10 in search and seizure cases to protect the privacy interests of Montana citizens. Indeed, in Hardaway, ¶ 57, we noted our “consistent trend toward protecting the privacy interests of our citizens[:]”
[I]n State v. Sawyer [174 Mont. 512, 571 P.2d 1131 (1977)], this Court first applied Article II, Section 10 to a search and seizure case and explicitly stated that Section 10 provided greater individual privacy protection in such cases than did the federal constitution. We restated this rule in [SoZis] and State v. Sierra, [214 Mont. 472, 692 P.2d 1273 (1985)], among others. During this same time, however, the Court ruled on numerous other search and seizure cases and made no reference to Article II, Section 10 whatsoever.... Subsequently, from the mid-1980s through the early 1990s, the Court provided no greater protection for individual privacy in search and seizure cases than parallel federal law provided .... However, since City of Billings v. Whalen (1990), 242 Mont. 293, 790 P.2d 471, this Court has given increased protection to the privacy rights of Montana citizens, limiting the scope of search and seizure cases, and since State v. Bullock [272 Mont. 361, 901 P.2d 61 (1995)], the Court has applied Article II, Section 10, emphasizing “privacy as a *431 mechanism to support interpretation of search and seizure cases.” ... In the ensuing years, we consistently analyzed search and seizure cases involving significant privacy issues under both Sections 10 and 11 of Article II of the Montana Constitution.
Hardaway, ¶ 51. In light of this “consistent trend” of protecting Montana citizens’ heightened privacy rights under our Constitution, the Hardaway Court overruled an earlier case addressing the relevant issue on the basis that the rationale in the prior case was premised exclusively on federal jurisprudence and failed to comport with current search and seizure and right to privacy analyses under the Montana Constitution. Hardaway, ¶¶ 55-57 (overruling State v. Ulrich, 187 Mont. 347, 609 P.2d 1218 (1980)).
¶24 Similarly here, we conclude Brown provides little, if any, guidance in resolving the issue before us in light of the reliance on federal jurisprudence-and limited analysis and application of the provisions of the Montana Constitution-in that case. Therefore, we overrule Brown and again recognize that Solis is not controlling precedent. As a result, we examine the issue before us anew, applying more current and consistent interpretations of Article II, Sections 10 and 11 of the Montana Constitution.
II, Analysis Under Current Montana Constitutional Search and Seizure and Right To Privacy Jurisprudence
¶25 The issue in the present case is whether the warrantless electronic monitoring and recording of a face-to-face conversation with the consent of one participant in the conversation violates the other participant’s rights to privacy and to be free from unreasonable searches and seizures guaranteed by Article II, Sections 10 and 11. The initial inquiry in addressing this issue is determining whether such conduct constitutes a search. See State v. Scheetz, 286 Mont. 41, 46, 950 P.2d 722, 724 (1997). A search is “the use of some means of gathering evidence which infringes upon a person’s reasonable expectation of privacy.” Hardaway, ¶ 16. “A search occurs when the government infringes upon an individual’s expectation of privacy that society considers objectively reasonable.” Where no objectively reasonable expectation of privacy exists, a “search” does not occur within the contemplation of Article II, Section 11 of the Montana Constitution. State v. Hamilton, 2003 MT 71, ¶ 17, 314 Mont. 507, ¶ 17,67 P.3d 871, ¶ 17 (citing Scheetz, 286 Mont, at 46, 950 P.2d at 725).
¶26 Article II, Section 11 protects Montana citizens from unreasonable searches and seizures. Similarly, the Article II, Section 10 right to privacy-even where established-is not absolute, but may be infringed *432 upon a showing of a compelling state interest to do so. See State v. Nelson, 283 Mont. 231, 243, 941 P.2d 441, 449 (1997). However, even upon a showing of a compelling state interest, “the State may not invade an individual’s privacy unless the procedural safeguards attached to the right to be free from unreasonable searches and seizures are met.” State v. Elison, 2000 MT 288, ¶53, 302 Mont. 228, ¶ 53, 14 P.3d 456, ¶ 53.
¶27 We determine whether a state action constitutes an “unreasonable” or “unlawful” search or seizure in violation of the Montana Constitution by analyzing three factors: 1) whether the person challenging the state’s action has an actual subjective expectation of privacy; 2) whether society is willing to recognize that subjective expectation as objectively reasonable; and 3) the nature of the state’s intrusion. See e.g. State v. Hill, 2004 MT 184, ¶ 24, 322 Mont. 165, ¶ 24,94 P.3d 752, ¶ 24. The first two factors are considered in determining whether a search or seizure occurred, thus triggering the protections of Article II, Sections 10 and 11. The third factor relates to the reasonableness of the search or seizure under the circumstances. Under the third factor, we determine whether the state action complained of violated the Article II, Section 10 and 11 protections because it was not justified by a compelling state interest or was undertaken without procedural safeguards such as a properly issued search warrant or other special circumstances. See e.g. State v. Tackitt, 2003 MT 81, ¶ 23, 315 Mont. 59, ¶ 23, 67 P.3d 295, ¶ 23; Scheetz, 286 Mont, at 50,950 P.2d at 727; State v. Smith, 2004 MT 234, ¶¶ 12-13, 322 Mont. 466, ¶¶ 12-13, 97 P.3d 567, ¶¶ 12-13. We address these factors in turn.
A. Did the Defendants Have an Actual Subjective Expectation of Privacy?
¶28 “[W]e recognize that naturally a person seeks to protect certain parts of his or her privacy, and it is those desires which are at the foundation for the constitutional safeguards that exist to protect them.” Scheetz, 286 Mont, at 48, 950 P.2d at 726. Moreover, a person normally expects privacy free from governmental intrusion not authorized by a warrant in her or his home. See State v. Graham, 2004 MT 385, ¶ 21, 325 Mont. 110, ¶ 21, 103 P.3d 1073, ¶ 21 (citations omitted). Thus, while the home is traditionally “the raison d’etre for the constitutional protection[,]” “the right to be free from unreasonable searches and seizures encompasses more than the home ....” Graham, ¶ 22. In that regard, we observe again that Article II, Section 11 guarantees that “[t]he people shall be secure in their persons, papers, *433 homes and effects from unreasonable searches and seizures.” (Emphasis added).
¶29 These fundamental principles clarify that we base our recognition of an actual expectation of privacy on various factors. See Scheetz, 286 Mont, at 48, 950 P.2d at 726. “ “What a person knowingly exposes to the public is not protected, but what an individual seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.’ ” Scheetz, 286 Mont, at 49,950 P.2d at 726-27 (quoting Bullock, 272 Mont, at 375, 901 P.2d at 70). Indeed, in Montana,
when persons leave the privacy of their home and expose themselves and their effects to the public and its independent powers of perception, it is clear that they cannot expect to preserve the same degree of privacy for themselves or their affairs as they could expect at home. However, when a person takes precautions to place items behind or underneath seats, in trunks or glove boxes, or uses other methods of ensuring that those items may not be accessed and viewed without permission, there is no obvious reason to believe that any privacy interest with regard to those items has been surrendered simply because those items happen to be in an automobile.
Elison, ¶ 51 (citation omitted). While Elison involved physical items stowed within a vehicle, the same rationale applies to a conversation with another person in a vehicle which cannot be overheard by the public outside the vehicle. Thus, where a person has gone to considerable trouble to keep activities and property away from prying eyes, the person evinces a subjective expectation of privacy in those activities and that property. State v. 1993 Chevrolet Pickup, 2005 MT 180, ¶ 12, 328 Mont. 10, ¶ 12, 116 P.3d 800, ¶ 12. Accordingly, we determine whether a person has knowingly exposed something to the public and, consequently, surrendered his or her privacy protections by looking at the particular facts of the case. Scheetz, 286 Mont, at 49, 950 P.2d at 726-27.
¶30 Here, the face-to-face conversations between the Defendants and one other individual were within the Defendants’ private homes and, in Hamper’s case, in the confines of a vehicle. The Defendants did not conduct their conversations where other individuals were present or physically within range to overhear the conversations. In other words, the Defendants kept their activities and conversations away from prying eyes (and ears), and did not expose their conversations to the public’s “independent powers of perception.” We conclude the *434 Defendants exhibited actual subjective expectations of privacy in the face-to-face conversations they held in private settings.
B. Is Society Willing to Recognize the Defendants’ Expectations of Privacy as Reasonable?
¶31 We next address whether society is willing to recognize an individual’s subjective expectation that a one-on-one conversation conducted in a private setting is not being surreptitiously electronically monitored and recorded. Stated differently, does society perceive it is reasonable to expect privacy in a personal conversation held in a private setting? “The reasonableness inquiry hinges on the essence of underlying constitutional values-including respect for both private, subjective expectations and public norms. In assessing the constitutionality of technologically enhanced government surveillance in a particular case, we must identify the values that are at risk, and vest the reasonable-expectation-of-privacy test with those values.” State v. Blow, 602 A.2d 552, 555 (Vt. 1991).
¶32 We observe here the importance of avoiding an overly narrow delineation of the nature of the reasonableness inquiry, because to do so would render every conceivable factual difference in a conversation subject to litigation. In Montana, the protections afforded by Article II, Section 11 of the Montana Constitution “extend to all of Montana’s citizens including those suspected of a criminal act or charged with one.” Hardaway, ¶ 14. Indeed, we have long observed this principle, even under the search and seizure provision of our 1889 Constitution:
the exercise of the power of search and seizure is absolutely essential to the public welfare.... But the process may be exercised, and the law enforced and vindicated, without transgressing those constitutional guaranties which are provided for all alike, the guiltless and the guilty.
State ex rel. Thibodeau v. Fourth Jud. Dist, 70 Mont. 202, 209, 224 P. 866, 869 (1924) (emphasis added).
¶33 We have on prior occasions quoted extensively from-and discussed the debates of-the delegates to the constitutional convention with regard to the inclusion of the right to privacy in the 1972 Montana Constitution. See e.g. Siegal, 281 Mont, at 276-77, 934 P.2d at 191-92. Delegate Campbell stated that “the [Bill of Rights] committee felt very strongly that the people of Montana should be protected as much as possible against eavesdropping, electronic surveillance, and such type of activities.... [W]e found that the citizens of Montana were very suspicious of such type of activity.” Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. *435 1682. Delegate Dahood reported even more strongly: “[I]t is inconceivable to any of us that there would ever exist a situation in the State of Montana where electronic surveillance could be justified.... [W]ithin the area of the State of Montana, we cannot conceive of a situation where we could ever permit electronic surveillance.” Transcript, p. 1687. Thus, the Constitutional Convention delegates were aware of the great value Montana citizens place on the right to privacy and the clear risk to that privacy engendered by the existence and advancement of electronic technology as used by law enforcement.
¶34 “[T]he proceedings of the 1972 Montana Constitutional Convention disclose on the part of the delegates a particular concern over the intrusion of the government into the privacy of Montanans through the use of various types of electronic monitoring and surveillance.” Siegal, 281 Mont, at 265, 934 P.2d at 184.
[I]t is clear that the delegates’ concerns encompassed the invasion of citizens’ privacy without their knowledge by means of various sorts of electronic audio and visual monitoring and surveillance equipment. Not only were the delegates wary of existing technology of this type, but they recognized that this sort of technology would continue to be refined and would become more widespread and easily available. In this regard their concerns have been well-founded. Moreover, it is also clear that, in the delegates’ view, the use of this sort of technology should be justified only in the most serious of situations, involving heinous crimes where it is necessary to “risk the right of individual privacy because there is a greater purpose to be served.”
Siegal, 281 Mont, at 277, 934 P.2d at 192.
¶35 The express statements of the delegates to the 1972 Montana Constitutional Convention regarding the government’s use of electronic surveillance against Montana’s citizens provide direct support for a conclusion that society is willing to recognize as reasonable the expectation that conversations held in a private setting are not surreptitiously being electronically monitored and recorded by government agents. We are convinced that Montanans continue to cherish the privacy guaranteed them by Montana’s Constitution. Thus, while we recognize that Montanans are willing to risk that a person with whom they are conversing in their home or other private setting may repeat that conversation to a third person, we are firmly persuaded that they are unwilling to accept as reasonable that the same conversation is being electronically monitored and recorded by government agents without their knowledge.
*436 ¶36 Nor should the underlying purpose or content of the conversations at issue reflect upon society’s willingness to accept a subjective expectation of privacy in those conversations as reasonable. As the Supreme Court of Alaska aptly stated,
[a]ll of us discuss topics and use expressions with one person that we would not undertake with another and that we would never broadcast to a crowd. New of us would ever speak freely if we knew that all our words were being captured by machines for later release before an unknown and potentially hostile audience. No one talks to a recorder as he talks to a person.... One takes the risk that his friend may repeat what has been said. One shouldn’t be required to take the additional risk of an entirely different character-that his conversation is being surreptitiously transcribed or broadcast.
.... It is axiomatic that police conduct may not be justified on the basis of the fruits obtained. It is, of course, easy to say that one engaged in an illegal activity has no right to complain if his conversations are broadcast or recorded. If, however, law enforcement officials may lawfully cause participants secretly to record and transcribe private conversations, nothing prevents monitoring of those persons not engaged in illegal activity, who have incurred displeasure, have not conformed or have espoused impopular causes.
State v. Glass, 583 P.2d 872, 877-78 (Alaska 1978) (internal citations omitted).
¶37 Based on the foregoing, we conclude each Defendant’s expectation of privacy in the conversations at issue here is one society is willing to accept as reasonable. As stated above, “[a] search occurs when the government infringes upon an individual’s expectation of privacy that society considers objectively reasonable.” Hamilton, ¶ 17. Thus, we further conclude that the electronic monitoring and recording of the Defendants’ in-person conversations constituted searches within the contemplation of the Article II, Sections 10 and 11 rights to privacy and to be free from unreasonable searches.
C. Nature of the State’s Intrusion
¶38 We next address whether the nature of the State’s intrusion in conducting the searches at issue renders those searches unreasonable under the circumstances before us. In other words, the remaining question is whether the searches violate the Defendants’ rights under Article II, Sections 10 and 11 of the Montana Constitution.
*437 ¶39 As stated above, the Article II, Section 10 right to privacy is not absolute, but may be infringed upon a showing of a compelling state interest to do so. Even upon the showing of a compelling state interest, however, state action which infringes upon an individual’s privacy right must be closely tailored to effectuate that compelling interest. Hamilton, ¶ 37. Thus, “the State may not invade an individual’s privacy unless the procedural safeguards attached to the right to be free from unreasonable searches and seizures are met.” Elison, ¶ 53.
¶40 Our long-standing rule is that searches conducted in the absence of a properly issued search warrant are per se unreasonable, absent a recognized exception to the warrant requirement. See e.g. State v. McLees, 2000 MT 6, ¶¶ 10 and 26, 298 Mont. 15, ¶¶ 10 and 26, 994 P.2d 683, ¶¶ 10 and 26.
“The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment [and Article II, Section 11 of the Montana Constitution] has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.”
McLees, ¶ 26 (quoting State v. Sorenson, 180 Mont. 269,274, 590 P.2d 136, 140 (1979)). Where, as here, a warrantless search has been conducted, the State bears the burden of establishing that an exception to the warrant requirement justifies the search. See Sorenson, 180 Mont, at 273, 590 P.2d at 139. The State advances alternative arguments in this regard and we address them in turn.
1. Consent
¶41 The State first argues that the warrantless searches at issue here were authorized by the confidential informants’ consent to the monitoring and recording of the conversations. Indeed, we long have recognized that a warrantless search is not unlawful where it is conducted with consent freely and voluntarily given. See e.g. Sorenson, 180 Mont, at 275, 590 P.2d at 140. Furthermore,
“when the prosecution seeks to justify a warrantless search by proof of a voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or *438 effects sought to be inspected.”
Sorenson, 180 Mont, at 275, 590 P.2d at 140 (quoting United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974)). The State asserts that, because the confidential informants in these cases arranged with law enforcement to wear the body wires and clearly consented to the electronic monitoring and recording of the conversations, their consents justified the warrantless searches.
¶42 As noted above, we derived the third-party consent exception to the constitutional search warrant requirement in Sorenson from the United States Supreme Court’s decision in Matlock. While we interpret Montana’s Constitution to provide greater protections for individuals in the context of search and seizure issues than does the Fourth Amendment to the United States Constitution, we use some federal Fourth Amendment analysis in addressing issues under the Montana Constitution. See e.g. Scheetz, 286 Mont, at 46-49, 950 P.2d at 725-27; Hill, ¶ 32. In that regard, we observe that the Supreme Court recently refined the third-party consent exception in Georgia v. Randolph, 547 U.S. 103, 126 S. Ct. 1515 (2006).
¶43 In Randolph, the defendant’s wife contacted law enforcement regarding a domestic dispute she had with Randolph. The wife informed the officers upon their arrival that Randolph was a drug user and items of drug use were located in the house. Randolph, who was present in the house at the time, denied his wife’s allegations and unequivocally refused the officers’ request for his consent to search the house. The officers then obtained the wife’s consent to search. During the search, the officers observed and seized evidence of drug use. Upon being charged with possession of cocaine, Randolph moved to suppress the evidence on the basis that his wife’s consent, given over his express refusal to consent, rendered the searches unlawful. The trial court denied the motion, the Court of Appeals of Georgia reversed the trial court, and the Georgia Supreme Court affirmed. Randolph, 547 U.S. at 107-08 126 S. Ct. at 1519.
¶44 The United States Supreme Court granted certiorari to address the question of “whether one occupant may give law enforcement effective consent to search shared premises, as against a co-tenant who is present and states a refusal to permit the search.” Randolph, 547 U.S. at 108,126 S. Ct. at 1520. The Supreme Court first reiterated its Matlock statement that “ ‘the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.’ ” Randolph, 547 U.S. at 110, 126 S. Ct. at 1521 (quoting Matlock, 415 *439 U.S. at 170, 94 S. Ct. at 993) (emphasis added). After some discussion of the underlying principles of co-tenancy, mutual authority over property or effects, and the Fourth Amendment’s protection of the individual against intrusion by the government, the Supreme Court held that “a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.” Randolph, 547 U.S. at 120, 126 S. Ct. at 1526.
¶45 The Supreme Court further clarified that
if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant’s permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.... So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant’s permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant’s contrary indication when he expresses it.
Randolph, 547 U.S. at 121-22, 126 S. Ct. at 1527.
Here, the search of conversations by means of electronic monitoring and recording, rather than the search of premises, is at issue. Each party to each conversation was physically present at the time of the search and had an interest-that is, an interest in the nature of a co-tenant in physical premises-in the conversation. Under the Randolph rationale-which we expressly adopt vis-á-vis private face-to-face conversations-the confidential informants’ consent to the electronic monitoring and recording of the conversations could not override any objection expressed by the Defendants. Furthermore, because both parties to the conversations were present at the time the searches were conducted, both parties must have the opportunity to object to the search. As the Supreme Court observed, law enforcement may not avoid a refusal of consent by removing a potentially objecting individual from the premises prior to requesting consent. “A generalized interest in expedient law enforcement cannot, without more, iustify a warrantless search.” Randolph, 547 U.S. at 115,126 S. Ct. at 1524, n. 5.
¶46 Similarly, here, the State cannot justify a search under the consent exception as a result of the simple expedient of failing to *440 inform the potential-and physically present-objecting party that the search is being conducted. We conclude that the warrantless searches of the conversations at issue here cannot be justified by the consent exception to the warrant requirement.
2. Particularized Suspicion Standard
¶47 Alternatively, the State contends that, if we conclude the electronic monitoring and recording of a face-to-face conversation constitutes a search, it should be subject to a particularized suspicion standard rather than the Article II, Section 11 probable cause requirement for the issuance of a search warrant. In essence, the argument is that the State’s intrusion into the Defendants’ privacy expectations by the electronic monitoring and recording of their conversations was minimal and, therefore, did not rise to a level of requiring probable cause.
¶48 We observe at the outset that the State relies on 1993 Chevrolet Pickup and State v. Hart, 2004 MT 51, 320 Mont. 154, 85 P.3d 1275, in support of applying a particularized suspicion standard to justify the searches of the conversations in the present cases. Neither of the cited cases-one of which involved the search of garbage placed in an alley and the other a canine sniff of the exterior of a vehicle-remotely supports applying a particularized suspicion standard to justify a search occurring in an individual’s home. “In Bullock and Siegal, we validated the long-standing notion throughout this country, but especially in Montana, that a person’s residence and his homestead are secure from unwarranted government intrusion, be it by physical or technological means.” Scheetz, 286 Mont, at 48,950 P.2d at 726. In two of the searches at issue here, the State intruded into the sanctity of the Defendants’ homes for the purpose of performing those searches by technological means. We will not countenance such an intrusion under a lesser standard than probable cause.
¶49 We turn, then, to the State’s argument that the particularized suspicion standard should apply to the search of the conversation between Hamper and the confidential informant which took place in the confidential informant’s vehicle. It first relies on 1993 Chevrolet Pickup in support of its argument, but that case is readily distinguishable.
¶50 In 1993 Chevrolet Pickup, law enforcement believed a suspect was operating an illegal drug laboratory. After a several-month investigation of the suspect’s activities, law enforcement officers conducted a warrantless “trash dive” on garbage cans located in the alley behind the suspect’s residence and discovered items related to the *441 manufacture of methamphetamine. Based on the evidence found in the suspect’s trash bags, the officers obtained a search warrant and the subsequent search of the suspect’s residence, pickup truck and boat turned up additional drug-related evidence. The suspect moved to suppress the evidence found during the warrant search, arguing the warrant was invalid because it was based on evidence obtained from an illegal search of his garbage. The trial court denied the motion, determining that the suspect did not have a reasonable expectation of privacy in his garbage. 1993 Chevrolet Pickup, ¶¶ 3-4.
¶51 On appeal, we addressed whether the warrantless search of a person’s garbage violated the person’s rights under Article II, Sections 10 and 11 of the Montana Constitution. We determined that, where a person has abandoned his or her garbage by placing it at a curb or in an alley for collection, any continued expectation of privacy in the garbage is not one society is willing to accept as reasonable. Thus, law enforcement’s actions of removing the garbage bag and looking through it for evidence constituted neither a seizure nor a search as contemplated by the Montana Constitution. 1993 Chevrolet Pickup, ¶ 17. Notwithstanding the absence of a seizure or a search, we placed constraints on such law enforcement activities, including a requirement that law enforcement have particularized suspicion that a crime is being committed to justify looking through the garbage. 1993 Chevrolet Pickup, ¶¶ 19-20. Having concluded above that the electronic monitoring and recording of Hamper’s conversation with the confidential informant in the informant’s vehicle constituted a search, we need not address 1993 Chevrolet Pickup further.
¶52 The State also relies on Hart in support of its argument that a particularized suspicion standard should apply to justify the warrantless monitoring and recording of face-to-face conversations with the consent of one participant in the conversation. Hart involved a drug-detecting canine sniff of the exterior of a vehicle. We determined the dog sniff of the exterior of a vehicle constituted a search, but that such a search may be justified by particularized suspicion of wrongdoing, rather than probable cause sufficient for issuance of a search warrant. Hart, ¶ 20 (citing Tackitt, ¶ 29). Here, the State asserts that, because the electronic monitoring and recording of a conversation is even less intrusive than a dog sniff, particularized suspicion is a sufficient standard here. We disagree.
¶53 In Tackitt, law enforcement officers used a drug-detecting canine to sniff the exterior of the defendant’s vehicle parked outside his residence and the canine alerted on the trank of the vehicle, *442 indicating the presence of drugs. Tackitt, ¶ 7. We relied on Elison, ¶ 51, in concluding that the canine sniff constituted a search because Tackitt maintained a reasonable expectation of privacy in the items stowed in his vehicle’s trunk. Tackitt, ¶¶ 21-22. We then determined that, although warrantless searches generally are per se unreasonable, the purpose and minimally intrusive nature of such a canine sniff warranted an exception to the warrant requirement, but would “still require particularized suspicion when the area or object subject to the canine sniff is already exposed to the public.” Tackitt, ¶ 29. Here, however, the private face-to-face conversation in the vehicle was not exposed to the public. Consequently, we decline to adopt a particularized suspicion standard to justify the warrantless electronic monitoring and recording of a one-on-one conversation occurring in a vehicle.
III. Conclusion
¶54 For the above-stated reasons, we hold that the electronic monitoring and recording of the Defendants’ conversations with the confidential informants, notwithstanding the consent of the confidential informants, constituted searches subject to the warrant requirement of Article II, Section 11 of the Montana Constitution. The electronic monitoring and recording of those conversations without a warrant or the existence of an established exception to the warrant requirement violated the Defendants’ rights under Article II, Sections 10 and 11. As a result, we hold the District Court erred in denying the Defendants’ motions to suppress evidence derived from the warrantless electronic monitoring and recording of the three conversations at issue on the basis that the activities at issue did not constitute searches.
¶55 Reversed and remanded for further proceedings consistent with this opinion.
JUSTICES NELSON and COTTER concur.