JUSTICE NELSON,
specially concurring.
¶21 I concur in the Court’s decision as to Issue One. I also concur as to Issue Two, but with the following explanation for my decision.
¶22 As to Issue Two, I agree that Detective Newell could testify as to his personal, direct observations of the “comings and goings of Foston and the CL” Opinion, ¶ 15. I also agree that, based on his training, experience, and personal observations, Newell could give his opinion that what he observed was consistent with his understanding of a drug deal. Opinion, ¶ 17. Finally, I agree that, independently of the warrantless audio and visual recordings (collectively, ‘the warrantless electronic surveillance”), which the jury never heard or saw, Newell had sufficient personal, direct observations on which to base his opinion testimony. Opinion, ¶¶ 17-18.
¶23 I am concerned, however, with the warrantless electronic surveillance that Newell “characterized” in his testimony. Admitting the actual warrantless electronic evidence would clearly run afoul of this Court’s decision in State v. Goetz, 2008 MT 296, 345 Mont. 421, 191 P.3d 489. But instead, Newell testified that the conversations which he overheard were “consistent with” his “understanding of a drug deal,” Opinion, ¶ 15, and the District Court admitted this testimony, over objection, under the present sense impression exception to the hearsay rule, Opinion, ¶ 16.[1]
¶24 In this regard, the Court holds that any error by the District Court in admitting Newell’s characterization of what he overheard through the warrantless electronic surveillance was harmless. Opinion ¶ 18. In so doing, the Court notes that it does “not endorse the District *91 Court’s reliance upon M. R. Evid. 803(1) as a ground for admitting Newell’s testimony.” Opinion, ¶ 17. Yet, the Court then notes, in conclusion, that ‘if it was error,” the error was harmless. Opinion, ¶ 19. This seems to imply that what was harmless error in the present case might not be error at all in the next cas e-Goetz notwithstanding.
¶25 Therefore, reading the Court’s Opinion for what it says and for what others may read as leaving open, I must state that I have serious concerns with the basis for the District Court’s ruling. In the first place, I am not persuaded that the present sense impression exception to the hearsay rule was even applicable. In the second place, if M. R. Evid. 803(1) is available to the prosecution in warrantless electronic surveillance cases, then this exception will effectively and completely gut our decision in Goetz. Law enforcement will be able to pursue electronic surveillance without a warrant and then, at trial, simply “characterize” the fruits of the unconstitutional search as being “consistent with” a drug transaction (or some other crime)-without repeating or admitting into evidence the actual conversations. There is no way to cross-examine this sort of “characterization” testimony without opening the door to admitting the audio and visual recordings themselves (assuming the trial court deemed those inadmissible under Goetz in the first place). The fundamental constitutional rights to individual privacy and to be free from unreasonable searches and seizures discussed and enforced in Goetz cannot be so easily and expediently abrogated by an exception to the hearsay rule.
¶26 That said, it is not necessary here to discuss further the merits of the District Court’s ruling, for two reasons. First, the Court recognizes that the District Court erred in ruling as it did in this case-a case which appears to involve garden-variety warrantless electronic surveillance. Opinion, ¶¶ 17-18. Presumably, this precedent will apply to other garden-variety warrantless electronic surveillance cases.
¶27 Second, I am encouraged that we will not see this issue again, given the following exchange which occurred at oral argument, where the State itself conceded the error of the District Court’s ruling:
JUSTICE: Mr. [Assistant Attorney General (hereinafter, “AG”)], let me ask you to comment on something. Aside from whatever problems there are in this particular case, if the officer is allowed to go on the stand and testify that “I’ve listened to the tapes; I’ve seen the audiovisual; I’m not going to repeat anything that was said, but it sure looked like a drug deal to me.” I guess two things come to mind, at least to my mind. It seems like a pretty facile way of getting around what we held in Goetz, first of all, and *92 secondly, there is absolutely no way for a defendant to cross-examine something like that without opening the door to getting into the discussion. And thirdly, it seems to me that what’s going to happen is the defense is going to come on with an expert and say, Tve heard the tapes; I’ve seen the audiovisual; it wasn’t a drug deal.” Where are we going with all this?
AG: I think your question relates more to the confrontation issue, Your Honor. And, with respect to the question that was earlier asked, the State would concede that this was not present sense impression. That was erroneous; this wasn’t present sense impression. To be honest with Your Honors, we were going down the wrong road in this case and getting into any alleged hearsay that occurred in this case. But the fact of the matter is, when the prosecutor-when Mr. Paul-when it came time for him to ask the question of Detective Newell, he thought better of his strategy, and he did not ask the informant-er excuse me, Detective Newell, to repeat any solemn, accusatory testimonial statement that the declarant made. And the evidence in this case-you know, there was cumulative evidence of this conversation, you know, of other conversations occurring with respect to Detective Newell’s testimony.
JUSTICE: Are we going to be seeing further cases where this technique is tried, though, in other cases?
AG: No, no. Your Honor, I think that’s a function of the fact that this is pre-Goetz. Now obviously post-Goetz, we wouldn’t be getting into this sort of thing because under Goetz, we need a warrant to get into any evidence regarding electronic surveillance. But the point, as we argued in our brief and as we’re arguing here today, is that the evidence of Detective Newell’s testimony was cumulative of other evidence in the record. We had a wealth of evidence that drug transactions were occurring based upon visual, naked view observations, observations with binoculars, seeing Mr. Foston through the curtains of the adjacent motel room where officers were located, coming and going to the motel room, maintaining constant visual surveillance of him going to Demetrius Smith’s residence, back to the motel room, and then meeting with the informant, and then the informant lo and behold comes out of these meetings and produces the cocaine. And we can tie the bills-fehe money that we gave to the informant to Demetrius Smith’s residence where Mr. Foston went in connection with the third transaction. It’s important in terms of *93 evaluating the prejudicial impact of Detective Newell’s testimony to contrast the evidence supporting the first charge with the evidence supporting the second and third charges. With respect to the first charge of which Mr. Foston was not convicted, the record indicates that officers saw a dark figure when Mr. Foston was going to Smith’s residence. There were points in the record where they were not able to make positive ID of Mr. Foston, and they did not maintain constant visual surveillance of Mr. Foston. The evidence regarding the second and third counts of which Mr. Foston was convicted was qualitatively much better and independent of any electronic surveillance in the case-occurring in this case. . . .
JUSTICE: Mr. [AG], then, I just want to put some parameters on your concession for my mind, is that it was error in the State’ s-it is the State’s position that it was error to allow the police officer to testify that it looked like a drug deal to him-that was error. It was harmless error.
AG: It was harmless error.
JUSTICE: It wasn’t a present sense impression, but was it proper in any other way?
AG: I don’t think so.
JUSTICE: It was error to let that in, but it’s harmless error.
AG: Well, and I think tooJ think the judge was thinking in terms of Detective Newell’s sense impressions and I think he was confusing what Detective Newell was observing with the hearsay exception. It was not a present sense impression, because obviously that applies to the present sense impression of the declarant, and that wasn’t the case here. But it’s our contention-no, we shouldn’t have started going down that road, but we did not go down it in the way that would have been reversible error because we did not ask Detective Newell to repeat any statements that the declarant made that are accusatory or testimonial.
¶28 Accordingly, and based on the foregoing, I concur in the Court’s decision as to Issue Two. The District Court erred in admitting, under M. R. Evid. 803(1), Detective Newell’s testimony “characterizing” the warrantless electronic surveillance as being “consistent with” a drug deal. Opinion, ¶¶ 15-17. Despite this error, however, Newell was properly allowed to testify as to his personal, direct observations of the comings and goings of Foston and the Cl and to offer his opinion of a drug transaction on the basis of those particular observations. Opinion *94 ¶ 17. Without going through a comprehensive VanKirk harmless-error analysis, see State v. Van Kirk, 2001 MT 184, ¶¶ 37-47, 306 Mont. 215, 32 P.3d 735; see also e.g. State v. Derbyshire, 2009 MT 27, ¶¶ 43-53, 349 Mont. 114, 201 P.3d 811, I conclude that under a correct application[2] of the Van Kirk test, and on the facts of this case, the District Court’s error was trial error, the tainted evidence was admitted to prove an element of the charged offense, the State has directed us to admissible evidence that proved the same facts as the tainted evidence, and the State has demonstrated that the quality of the tainted evidence was such that there was no reasonable possibility it might have contributed to Foston’s conviction.
¶29 I therefore concur as to Issue One and, with the foregoing explanation for my decision, concur as to Issue Two.

 “A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter,” is not excluded by the hearsay rule. M. R. Evid. 803(1).

 Compare Opinion, ¶ 18, with Derbyshire, ¶ 54.