
DA 08-0422

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 196N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

KELLY GENE PARANTEAU,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-2007-237
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Jim Wheelis, Chief Appellate Defender, Roberta R. Zenker, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

           Hon. Steve Bullock, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

           John Parker, Cascade County Attorney, Joel Thompson, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  May 13, 2009

Decided:  June 9, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On June 24, 2008, Kelly Gene Paranteau (Paranteau) was convicted of felony criminal distribution of dangerous drugs in the Eighth Judicial District Court. Prior to trial, Paranteau filed a motion to dismiss the charge for lack of a speedy trial and a motion to suppress certain evidence which the State intended to use against him. The District Court denied both of these motions, and Paranteau now appeals their denial. We affirm.

¶3 On April 19, 2007, Detective Bob Edwards (Detective Edwards) of the Cascade County Sheriff's Office and Central Montana Drug Task Force (CMDTF) received a phone call from a confidential informant (CI) stating that Paranteau wanted to know if he/she wished to purchase some methamphetamine, or meth. Detective Edwards acted in an undercover capacity on the phone call to state that he wished to purchase an "eight ball" of meth. After the CI conveyed this to Paranteau, Detective Edwards could hear Paranteau in the background saying the purchase was "do-able" and would cost $350 dollars. Detective Edwards told the CI that he would meet the CI later and arrange the deal.

2

¶4     Approximately one hour later, Detective Edwards and another detective met with the CI, searched the CI, placed an electronic monitoring device in the CI's vehicle, and gave the CI $350 dollars in pre-recorded money to make the controlled buy. The CI informed the detectives that Paranteau told him/her he would meet him/her at a Town Pump gas station there in Great Falls.

¶5     The detectives and members of CMDTF staked out the Town Pump and monitored the electronic recording device in anticipation of Paranteau's arrival. The CI made contact with Paranteau, and Detective Edwards immediately recognized Paranteau based on previous interactions involving illegal drugs. As the officers listened in on the recording device, Paranteau indicated that the drug transaction would occur nearby in the parking lot of the Legends Sports Bar. The officers continued to monitor the recording device, and followed Paranteau and the CI to the Legends Sports Bar parking lot. Once there, Paranteau exited the CI's car and got into a green Monte Carlo car which was parked there. Detective Edwards was familiar with the driver of the car as a known drug dealer.

¶6     A short time later, Paranteau exited the Monte Carlo, and returned to the CI's vehicle. They drove back to the Town Pump and Paranteau left. The CI then met with the detectives. The CI showed them the meth he/she had purchased in the ashtray of his/her car, and stated that he/she had not touched it. The meth field-tested positive and weighed 1.8 grams.

¶7     The next day, Detective Edwards and another detective made contact with Paranteau at the Town Pump. They identified themselves, detained him, told him that

3

they had him on a meth distribution charge, and took him to the Great Falls Police Department for an interview. The detectives claimed that Paranteau was advised of his rights, signed a waiver of rights, and willingly talked to them without an attorney present. Detective Edwards told Paranteau that he might not be charged if he provided them with information they were seeking. During the interview, Paranteau allegedly gave the detectives information concerning the source of his meth and his buyers, and admitted to obtaining meth for two separate individuals the previous day. At the conclusion of the interview, Paranteau was allowed to leave the police department. However, according to Detective Edwards, Paranteau was cautioned that he had to check in with the detectives regularly if he did not want to be arrested on the distribution charge.

¶8    When Paranteau failed to check in as instructed, Detective Edwards arrested him. On May 21, 2007, Paranteau was charged with felony distribution of dangerous drugs. He was placed into custody and was not able to post bail. While he was in custody, Paranteau sent Detective Edwards a note, or kite, asking to have the charge dismissed based on his previous cooperation. Detective Edwards responded that since Paranteau had failed to check in as required, the charge had been filed against him and he was now unable to help him. Paranteau's jury trial was later scheduled to begin on June 23, 2008.

¶9    Prior to trial, Paranteau filed a motion to dismiss for lack of a speedy trial and a motion to suppress. On June 16, 2008, the District Court denied both motions, explaining its rationale in a written order. The District Court analyzed the motion to dismiss for lack of a speedy trial under the four-factor test from *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. Under factor (1), length of the delay, the District Court noted

4

that this factor weighed in Paranteau's favor because the interval between the date of incarceration and trial date was 401 days. Under factor (2), reasons for the delay, the District Court found that 289 days were attributable to the State, and 113 days were attributable to Paranteau. The State's delay was due to the normal procedural process, unavailability of a witness, and overcrowded court docket, and thus did not weigh heavily against it. Paranteau's delay was attributable to the unavailability of his counsel for trial and the fact that he was awaiting action by federal authorities; thus, this delay did not weigh heavily against him either.

¶10     Under factor (3), the accused's response to the delay, the District Court noted that Paranteau failed to object to a continuance of the first trial setting, moved the court to reset the second trial date, and objected to resetting the trial on a third occasion. Paranteau's motion to dismiss for lack of a speedy trial was filed 42 days before the final trial date. In support of his motion, Paranteau testified that he did not learn about the changes to the trial schedule until after they had been approved, and that he would have objected to the continuances if he had been consulted by his attorney. Considering these facts together, the District Court concluded that this factor weighed very slightly in Paranteau's favor.

¶11     Respecting factor (4), prejudice to the accused, Paranteau had testified to the District Court that the jail was overcrowded, he was locked down for 16 hours a day, he was not offered rehabilitation or treatment, he put on 35 pounds and had two teeth broken, and that he had not received proper treatment for a medical condition. He also testified that he could not remember the names and addresses of witnesses, thus impairing

his defense. Additionally, he testified that he suffered from depression, anxiety, worry, and confusion on account of his pretrial incarceration. Taking into account these conditions, the District Court found that he failed to show that his incarceration was oppressive. The District Court noted that a motion to dismiss for lack of a speedy trial was not a proper vehicle to address grievances with the jail system or circumvent administrative procedures for handling such issues. With regard to the emotional and mental impact, the District Court found no prejudice and failed to see how Paranteau's memory could have been improved by being released from pretrial incarceration.

¶12 Balancing the factors as a whole, the District Court found that the State's showing of no prejudice in factor (4) outweighed the slight prejudice of factors (1) and (2). While factor (3) did weigh in Paranteau's favor, the District Court found the weight of this factor was relatively little and insufficient to tip the balance of the factors to find a violation of Paranteau's right to a speedy trial.

¶13 Regarding the motion to suppress, the District Court noted that Paranteau, who was in his 40's, was a "frequent consumer of criminal justice services" and that upon his arrest he was jailed for 37 days on account of 7 outstanding warrants. Despite Paranteau's assertions to the contrary, the District Court found the testimony of Detective Edwards credible, wherein he stated that Paranteau did not ask to speak with an attorney, and was not subjected to coercive or improper interrogation techniques in order to obtain a confession. The District Court found that Paranteau was allowed to use the bathroom as needed, the detectives did not yell at or threaten him, and that Paranteau was able to comprehend what was going on in spite of the fact that it was suspected he was under the

influence of meth at the time. The District Court concluded that Detective Edwards did not deceive Paranteau when he told him that he knew about the previous day's meth deal at the Town Pump, and suggested that Paranteau could help himself if he cooperated with the detectives. Additionally, the District Court found that the kite Paranteau sent Detective Edwards after his arrest was less credible than Detective Edwards' sworn testimony in court.

¶14 Paranteau was convicted by a jury on June 24, 2008. He was later sentenced to 20 years in the Montana State Prison, with 8 suspended and credit given for time served.

¶15 We review a district court's denial of a defendant's motion to suppress to determine whether the district court's findings of fact are clearly erroneous and its interpretation and application of the law is correct. *State v. Goetz* and *State v. Hamper*, 2008 MT 296, ¶ 9, 345 Mont. 421, 191 P.3d 489. Whether the defendant has been denied a speedy trial is a question of constitutional law which we review de novo to determine whether the court's interpretation and application of the law are correct. *Ariegwe*, ¶ 119. We review the factual findings in support of the district court's decision to determine if they are clearly erroneous. *Ariegwe*, ¶ 119.

¶16 We conclude that the District Court did not err in denying Paranteau's motion to suppress and motion to dismiss for lack of a speedy trial. Turning first to the motion to dismiss, we conclude that Paranteau has failed to demonstrate that the District Court's findings of fact in support thereof were clearly erroneous. With respect to the District Court's evaluation of factor (4), we conclude that Paranteau has failed to show that his pretrial incarceration was oppressive, unduly prolonged or aggravated the anxiety and

7

concern inherent in being charged with a crime, or impaired his ability to present his defense. Under factor (3), we also agree with the District Court's analysis that while this weighed slightly for Paranteau, it was insufficient to tip the overall balance of the factors in Paranteau's favor. Thus, we affirm the denial of Paranteau's motion to dismiss.

¶17 Concerning Paranteau's motion to suppress, we similarly conclude that the District Court did not err in determining that Paranteau's statements were not coerced, and that he made a voluntary, knowing, and intelligent waiver of his rights. We agree with the State that the facts at bar are analogous to *State v. Honey*, 2005 MT 107, 327 Mont. 49, 112 P.3d 983, and compel the conclusion that the police conduct in this case was not improper, and that Detective Edwards did not use unlawful threats or promises to procure Paranteau's cooperation in this matter.

¶18 Finally, we decline Paranteau's request to retroactively apply the *Goetz* rule to his case, and decline to review this claim under plain error, because Paranteau never objected or otherwise moved to suppress the evidence obtained from the electronic monitoring device. *See State v. Foston*, 2009 MT 191, ___ Mont. ___, ___ P.3d ___.

¶19 We have determined to decide this case pursuant to Section 1, Paragraph 3(d)(v) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the record before us that the District Court did not err in denying Paranteau's motion to dismiss and motion to suppress. Affirmed.

/S/ PATRICIA COTTER

8

We concur:

/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE