DA 08-0225

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 191

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JOHNNIE LEE FOSTON,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 07-205
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Joseph Palmer Howard, Attorney at Law (argued), Great Falls, Montana

      For Appellee:

      Hon. Steve Bullock, Montana Attorney General; Mark W. Mattioli, Assistant Attorney General (argued), Helena, Montana

      Fred R. Van Valkenburg, Missoula County Attorney; Andrew Paul, Deputy County Attorney, Missoula, Montana

Argued: May 4, 2009
Submitted: May 5, 2009
Decided: May 28, 2009

Filed:

_____
Clerk

FILED

May 28 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Johnnie Lee Foston was convicted by a Missoula County jury of two counts of felony distribution of dangerous drugs (cocaine) in violation of § 45-9-101, MCA.  He received a sentence of twenty years in the Montana State Prison on each count, to run consecutively, with the sentence on the second count suspended.

¶2      Foston presents the following issues for review:

¶3      Issue One:  Whether this Court should exercise plain error review to address Foston's claim that law enforcement officers improperly used electronic monitoring of the drug transactions.

¶4      Issue Two:  Did the District Court improperly admit the testimony by one of the law enforcement officers that the conversations he overheard between Foston and the undercover informant were consistent with drug transactions?

## PROCEDURAL AND FACTUAL BACKGROUND

¶5      Foston came to the attention of law enforcement officers in Missoula County as a person who may be selling cocaine.  Detective Newell of the Sheriff's Department made arrangements for a confidential informant (CI) to make controlled drug purchases from Foston.  Newell had been with the Sheriff's Office for fifteen years, and had worked on the drug task force the entire time. These purchases were coordinated by Newell and were conducted under the surveillance of several law enforcement officers.  Some of the interactions between Foston and the CI took place in motel rooms in which the officers

2

had installed video and audio monitoring devices that allowed them to hear and see what occurred in the rooms.

¶6     A controlled buy occurred on April 20, 2007. Newell was with the CI when she called Foston and arranged to buy two ounces of cocaine for $2,800. Foston and the CI arranged to conduct the sale at the CI's motel room, where the officers had installed a radio transmitter and video camera that allowed them to hear and observe activity in the room. Newell gave the CI marked bills to make the drug buy.

¶7     On the afternoon of April 20 the officers in a room adjacent to the CI's room observed Foston arrive at the motel in his vehicle. They saw him walk past their room to the CI's room and knock on the door. Through the video camera the officers saw the CI give Foston money for the drugs. The officers then watched Foston leave the motel and followed his car to the home of Demetrius Smith. The officers saw Foston enter the Smith house and then return to the motel where he met the CI in a parking lot across the street. Immediately after Foston left the scene the CI delivered two ounces of cocaine to Newell.

¶8     The next controlled buy occurred on May 2, 2007, again at a motel with the same CI, and with officers providing visual and electronic surveillance from an adjacent room. Officers observed Foston arrive, enter the CI's room and leave. He returned and met the CI outside in a vehicle. When the CI returned to the motel room she delivered cocaine to the officers. A subsequent search of the Smith house recovered a gun, drugs and some of the money the CI had used to buy the drugs from Foston. Smith testified that he held

3

drugs and money for Foston. At trial the State did not present the testimony of the CI or the recordings of any of the transactions.

## STANDARD OF REVIEW

¶9 This Court will undertake review of matters not raised at the trial court level only in narrow circumstances assessed on a case-by-case basis. Those include situations where failing to review the alleged error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial, or may compromise the integrity of the judicial process. *State v. English*, 2006 MT 177, ¶ 66, 333 Mont. 23, 140 P.3d 454.

¶10 We review issues involving the admission of evidence for an abuse of discretion. *State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, 127 P.3d 458.

## DISCUSSION

¶11 Issue One: Whether this Court should exercise plain error review to address Foston's claim that law enforcement officers improperly used electronic monitoring of the drug transactions. Foston urges reversal of his conviction based on the decision in *State v. Goetz*, 2008 MT 296, 345 Mont. 421, 191 P.3d 489, where this Court held that warrantless electronic monitoring and recording of face to face conversations between informants and defendants in the defendants' home, in the absence of an exception to the warrant requirement, violates Article II, Sections 10 and 11 of the Montana Constitution. *Goetz*, ¶ 54.

¶12 Foston did not make any warrant-based objection to the electronic surveillance at his trial, and the *Goetz* case was decided after Foston's conviction. Foston filed a motion

4

to stay this appeal and to remand his case to the District Court to determine whether an officer's purported testimony regarding Foston's conversations with the CI should have been suppressed based upon *Goetz*. After receiving briefs, we denied the motion, declining to retroactively apply the *Goetz* holding to Foston's case. The determinative factor was that Foston's case was not "similarly situated" with the Goetz case because Foston had not objected to the electronic surveillance on warrant grounds at trial. We concluded that none of the exceptions to the contemporaneous objection requirement applied. *See State v. Carter*, 2005 MT 87, ¶¶ 13-19, 326 Mont. 427, 114 P.3d 1011.

¶13    On appeal, Foston makes a brief and conclusory assertion that this Court should undertake plain error review of the *Goetz* issue, citing *Carter*. Foston has not provided any substantial reason why he is entitled to plain error review, and this issue was decided in the order denying his motion to stay and remand. *Goetz* does not apply to Foston's case for the reasons stated in our October 29, 2008, Order in this matter.

¶14    Issue Two: Did the District Court improperly admit testimony by one of the law enforcement officers as to whether Foston's conversations with the CI were consistent with drug transactions? Foston broadly contends that Officer Newell was improperly allowed to testify as to the contents of Foston's conversations with the CI that Newell heard through the use of the electronic monitoring. However, Foston does not cite any such specific testimony by Newell, and we find none. While the prosecutor asked Newell to recount statements made by the CI or by Foston, Foston's attorney objected and ultimately Newell never answered those questions. Newell did not testify as to the content of conversations or statements by Foston or the CI.

5

¶15 Newell did testify at length about the controlled drug buy transactions between Foston and the CI, as noted in the facts summarized above. This testimony was primarily based upon direct observations that Newell and other officers made of the comings and goings of Foston and the CI, upon Newell's providing the money for the drug buys, and upon recovering from the CI the drugs that Foston sold her. At the end of this testimony, Newell was asked whether the conversations he overheard were "consistent with" his "understanding of a drug deal" and he answered that they were.

¶16 On appeal the parties disagree as to the legal significance of Newell's "understanding of a drug deal" answer. The District Court admitted the testimony, over objection, as a present sense impression under M. R. Evid. 803(1). Foston contends that the testimony was hearsay and not admissible as a statement of present sense impression. On appeal the State does not argue that Newell's testimony was admissible under Rule 803(1). The State argues that the testimony was Newell's opinion and was not hearsay because it was not a recounting of a statement of Foston or the CI. The State also argues that in any event if admission of the testimony was error, it was harmless error.

¶17 We do not endorse the District Court's reliance upon M. R. Evid. 803(1) as a ground for admitting Newell's testimony. Newell's answer was a statement of his opinion based upon his personal observation of transactions that the jury did not hear or see, admissible under M. R. Evid. 701. Under that rule a witness who is not an expert may testify in the form of inferences or opinions that are rationally based on the witness' perceptions and that are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. This Court has upheld admission of opinion testimony

6

by law enforcement officers. *Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 39, 301 Mont. 259, 9 P.3d 38, *rev'd in part on other grounds*, *Johnson v. Costco*, 2007 MT 43, 336 Mont. 105, 152 P.3d 727; *State v. Frasure*, 2004 MT 305, ¶¶ 17-18, 323 Mont. 479, 100 P.3d 1013; *Hall v. Rasmussen*, 261 Mont. 328, 335-36, 863 P.2d 389, 394 (1993). If the jury is capable of understanding the facts without the witness' opinion, the opinion is not admissible. *State v. Webb*, 243 Mont. 368, 373-74, 792 P.2d 1097, 1100 (1990). Since the jury never heard or saw the conversations between Foston and the CI, Newell's opinion as to what he heard and saw were helpful to a clear understanding of his testimony. *United States v. Freeman*, 498 F.3d 893, 901-02 (9th Cir. 2007).

¶18 In addition, at trial the State presented ample evidence from which the jury could conclude that Foston was selling cocaine, wholly independent from the one answer by Newell that whatever he overheard was consistent with a drug deal. Independently of the electronic surveillance, the officers knew that the CI had arranged to meet Foston to buy drugs, that she was given marked bills to do so, and that she delivered cocaine to them immediately after meeting Foston. The officers saw Foston coming to the motel, and heard him knocking of the door of the CI's room. They saw him leaving the CI's room and they followed him to the Smith residence where they found drugs, a gun, and cash that included the marked bills that had been provided to the CI to make the drug buys. Smith testified that he held the drugs and money for Foston. Since the State presented ample evidence to support the conclusion that Foston had engaged in drug sales, any error was harmless beyond a reasonable doubt. *State v. Strauss*, 2003 MT 195, ¶ 25, 317 Mont. 1, 74 P.3d 1052.

¶19    In the context of this evidence and the entirety of the testimony presented at trial, Newell's statement of his opinion that the CI and Foston had conducted drug deals was cumulative and harmless, if it was error. *Freeman*, 498 F.3d at 905-06.

¶20    We affirm.


/S/ MIKE McGRATH


We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS


Justice James C. Nelson, specially concurring.

¶21    I concur in the Court's decision as to Issue One. I also concur as to Issue Two, but with the following explanation for my decision.

¶22    As to Issue Two, I agree that Detective Newell could testify as to his personal, direct observations of the "comings and goings of Foston and the CI." Opinion, ¶ 15. I also agree that, based on his training, experience, and personal observations, Newell could give his opinion that what he observed was consistent with his understanding of a drug deal. Opinion, ¶ 17. Finally, I agree that, *independently* of the warrantless audio and visual recordings (collectively, "the warrantless electronic surveillance"), which the

jury never heard or saw, Newell had sufficient personal, direct observations on which to base his opinion testimony. Opinion, ¶¶ 17-18.

¶23 I am concerned, however, with the warrantless electronic surveillance that Newell "characterized" in his testimony. Admitting the actual warrantless electronic evidence would clearly run afoul of this Court's decision in *State v. Goetz*, 2008 MT 296, 345 Mont. 421, 191 P.3d 489. But instead, Newell testified that the conversations which he overheard were "consistent with" his "understanding of a drug deal," Opinion, ¶ 15, and the District Court admitted this testimony, over objection, under the present sense impression exception to the hearsay rule, Opinion, ¶ 16.[1]

¶24 In this regard, the Court holds that any error by the District Court in admitting Newell's characterization of what he overheard through the warrantless electronic surveillance was harmless. Opinion ¶ 18. In so doing, the Court notes that it does "not endorse the District Court's reliance upon M. R. Evid. 803(1) as a ground for admitting Newell's testimony." Opinion, ¶ 17. Yet, the Court then notes, in conclusion, that "if it was error," the error was harmless. Opinion, ¶ 19. This seems to imply that what was harmless error in the present case might not be error at all in the next case—*Goetz* notwithstanding.

¶25 Therefore, reading the Court's Opinion for what it says and for what others may read as leaving open, I must state that I have serious concerns with the basis for the District Court's ruling. In the first place, I am not persuaded that the present sense

---

[1] "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," is not excluded by the hearsay rule. M. R. Evid. 803(1).

impression exception to the hearsay rule was even applicable. In the second place, if M. R. Evid. 803(1) is available to the prosecution in warrantless electronic surveillance cases, then this exception will effectively and completely gut our decision in *Goetz*. Law enforcement will be able to pursue electronic surveillance without a warrant and then, at trial, simply "characterize" the fruits of the unconstitutional search as being "consistent with" a drug transaction (or some other crime)—without repeating or admitting into evidence the actual conversations. There is no way to cross-examine this sort of "characterization" testimony without opening the door to admitting the audio and visual recordings themselves (assuming the trial court deemed those inadmissible under *Goetz* in the first place). The fundamental constitutional rights to individual privacy and to be free from unreasonable searches and seizures discussed and enforced in *Goetz* cannot be so easily and expediently abrogated by an exception to the hearsay rule.

¶26 That said, it is not necessary here to discuss further the merits of the District Court's ruling, for two reasons. First, the Court recognizes that the District Court erred in ruling as it did in this case—a case which appears to involve garden-variety warrantless electronic surveillance. Opinion, ¶¶ 17-18. Presumably, this precedent will apply to other garden-variety warrantless electronic surveillance cases.

¶27 Second, I am encouraged that we will not see this issue again, given the following exchange which occurred at oral argument, where the State itself conceded the error of the District Court's ruling:

> JUSTICE: Mr. [Assistant Attorney General (hereinafter, "AG")], let me ask you to comment on something. Aside from whatever problems there are in this particular case, if the officer is allowed to go on the stand and

testify that "I've listened to the tapes; I've seen the audiovisual; I'm not going to repeat anything that was said, but it sure looked like a drug deal to me." I guess two things come to mind, at least to my mind. It seems like a pretty facile way of getting around what we held in *Goetz*, first of all, and secondly, there is absolutely no way for a defendant to cross-examine something like that without opening the door to getting into the discussion. And thirdly, it seems to me that what's going to happen is the defense is going to come on with an expert and say, "I've heard the tapes; I've seen the audiovisual; it wasn't a drug deal." Where are we going with all this?

AG:   I think your question relates more to the confrontation issue, Your Honor. And, with respect to the question that was earlier asked, the State would concede that this was not present sense impression. That was erroneous; this wasn't present sense impression. To be honest with Your Honors, we were going down the wrong road in this case and getting into any alleged hearsay that occurred in this case. But the fact of the matter is, when the prosecutor—when Mr. Paul—when it came time for him to ask the question of Detective Newell, he thought better of his strategy, and he did not ask the informant—or excuse me, Detective Newell, to repeat any solemn, accusatory testimonial statement that the declarant made. And the evidence in this case—you know, there was cumulative evidence of this conversation, you know, of other conversations occurring with respect to Detective Newell's testimony.

JUSTICE:   Are we going to be seeing further cases where this technique is tried, though, in other cases?

AG:   No, no. Your Honor, I think that's a function of the fact that this is pre-*Goetz*. Now obviously post-*Goetz*, we wouldn't be getting into this sort of thing because under *Goetz*, we need a warrant to get into any evidence regarding electronic surveillance. But the point, as we argued in our brief and as we're arguing here today, is that the evidence of Detective Newell's testimony was cumulative of other evidence in the record. We had a wealth of evidence that drug transactions were occurring based upon visual, naked view observations, observations with binoculars, seeing Mr. Foston through the curtains of the adjacent motel room where officers were located, coming and going to the motel room, maintaining constant visual surveillance of him going to Demetrius Smith's residence, back to the motel room, and then meeting with the informant, and then the informant lo and behold comes out of these meetings and produces the cocaine. And we can tie the bills—the money that we gave to the informant to Demetrius Smith's residence where Mr. Foston went in connection with the third transaction. It's important in terms of evaluating the prejudicial impact of

Detective Newell's testimony to contrast the evidence supporting the first charge with the evidence supporting the second and third charges. With respect to the first charge of which Mr. Foston was not convicted, the record indicates that officers saw a dark figure when Mr. Foston was going to Smith's residence. There were points in the record where they were not able to make positive ID of Mr. Foston, and they did not maintain constant visual surveillance of Mr. Foston. The evidence regarding the second and third counts of which Mr. Foston was convicted was qualitatively much better and independent of any electronic surveillance in the case—occurring in this case. . . .

JUSTICE:    Mr. [AG], then, I just want to put some parameters on your concession for my mind, is that it was error in the State's—it is the State's position that it was error to allow the police officer to testify that it looked like a drug deal to him—that was error. It was harmless error.

AG:    It was harmless error.

JUSTICE:    It wasn't a present sense impression, but was it proper in any other way?

AG:    I don't think so.

JUSTICE:    It was error to let that in, but it's harmless error.

AG:    Well, and I think too—I think the judge was thinking in terms of Detective Newell's sense impressions and I think he was confusing what Detective Newell was observing with the hearsay exception. It was not a present sense impression, because obviously that applies to the present sense impression of the declarant, and that wasn't the case here. But it's our contention—no, we shouldn't have started going down that road, but we did not go down it in the way that would have been reversible error because we did not ask Detective Newell to repeat any statements that the declarant made that are accusatory or testimonial.

¶28    Accordingly, and based on the foregoing, I concur in the Court's decision as to Issue Two. The District Court erred in admitting, under M. R. Evid. 803(1), Detective Newell's testimony "characterizing" the warrantless electronic surveillance as being "consistent with" a drug deal. Opinion, ¶¶ 15-17. Despite this error, however, Newell

12

was properly allowed to testify as to his personal, direct observations of the comings and goings of Foston and the CI and to offer his opinion of a drug transaction on the basis of those particular observations. Opinion ¶ 17. Without going through a comprehensive *Van Kirk* harmless-error analysis, *see State v. Van Kirk*, 2001 MT 184, ¶¶ 37-47, 306 Mont. 215, 32 P.3d 735; *see also e.g. State v. Derbyshire*, 2009 MT 27, ¶¶ 43-53, 349 Mont. 114, 201 P.3d 811, I conclude that under a correct[2] application of the *Van Kirk* test, and on the facts of this case, the District Court's error was trial error, the tainted evidence was admitted to prove an element of the charged offense, the State has directed us to admissible evidence that proved the same facts as the tainted evidence, and the State has demonstrated that the quality of the tainted evidence was such that there was no reasonable possibility it might have contributed to Foston's conviction.

¶29 I therefore concur as to Issue One and, with the foregoing explanation for my decision, concur as to Issue Two.

/S/ JAMES C. NELSON

---

[2] *Compare* Opinion, ¶ 18, *with Derbyshire*, ¶ 54.